## Taylor *versus* Young.

1. Barnet made a mortgage and died in 1868 ; in April and May 1869, a scire facias and alias were issued on the mortgage ; both were returned "nihil;" in June the death of Barnet was suggested ; in July judgment was entered on the two " nihils," the land was sold under a levari without warning the personal representative of Barnet.   *Held*, that the sale passed a good title to the mortgaged premises.

2. Two returns of " nihil" to successive writs of scire facias on a mortgage are equivalent to " scire feci," whether the mortgagor be living or dead.

3. The death of the mortgagor cannot be averred against the judgment.

4. The maxims " *In fictione juris existit æquitas*," and "*utile per inutile non vitiatur*," applied.

5. Under 33d sect. of Act of February 24th 1834 (Decedents), notice to the personal representatives of decedent is not necessary after judgment on a mortgage, before issuing execution.

6. Cadmus v. Jackson, 2 P. F. Smith 295 ; Chambers v. Carson, 2 Whart. 365 ; Wood v. Colwell, 10 Casey 92, remarked on.

February 19th 1872.   Before AGNEW, SHARSWOOD and WILLIAMS, JJ.   THOMPSON, C. J., at Nisi Prius.

Error to the District Court of *Philadelphia :* No. 143, to July Term 1871.

This was an action of ejectment, brought May 14th 1870, by Richard Young against Sarah Taylor, for real estate in the Fifth ward, Philadelphia.

[Taylor *v.* Young.]

The plaintiff claimed as purchaser of the land at sheriff's sale as the property of·Robert Barnet, Jr. ; the defendant defended as the guardian of the minor children of Barnet, who was dead, alleging that the title of Barnet had not passed by the sale, because he, being dead at the time of the judgment, no process had been issued to warn his representatives before execution had been issued.

The case was tried April 12th 1871, before Stroud, J., when it appeared that Robert Barnet, Jr. executed a mortgage of the premises to Robert Barnet, senior dated February 25th 1857 ; the mortgage was assigned May 15th 1858, to Alexander Gibson :— Richard Barnet, Jr. died in possession of the premises on the 14th of July 1868. On the 16th of April 1869, Gibson as assignee, issued a scire facias on the mortgage against Robert Barnet, Jr., which was returned " Nihil." ·On the 5th of May 1839, an alias scire facias, Gibson, assignee of Barnet *v.* Robert Barnet, was issued, which was returned " nihil." ˙ On the 10th of June 1869, the death of Robert Barnet, Jr. was suggested on the record. On the 3d of July 1869, judgment by default was entered for the plaintiff on two returns of " nihil." To July Term 1869, a levari facias was issued ; to September Term 1869 an alias levari was issued, and to December Term 1869 a pluries levari facias ; each without warning the personal representatives of Barnet. Under the last writ the premises were sold by the sheriff to Sarah Taylor the plaintiff, and the deed acknowledged February 12th 1872.

The defendant asked the court to charge : " Sheriffs' vendees buy at their peril. Not only must there be a legal judgment, but a legal execution also to make a sheriff's sale valid, and therefore if the jury find that the writ of execution issued subsequently to Barnet's death, without bringing in by sci. fa. his personal representatives, the execution was void. Young took no title, and the verdict must be for the defendant." .

The court answered :—

" I decline to charge as requested by the defendant. If you believe the evidence of the plaintiff, he has shown title in him, and the defendant has neither shown title nor any reason why the plaintiff should not recover."

The verdict was for the plaintiff.

The defendant took a writ of error, and assigned the charge of the court for error.

*T. F. Jenkins* and *I. N. Brown* (with whom was *T. R. Elcock*), for plaintiff in error, cited Wood *v.* Colwell, 10 Casey 92 ; Cadmus *v.* Jackson, 2 P. F. Smith 295 ; Act of 24th February 1834, § 33, Pamph. L. 77 ; 2 Bright. Purd. 425, pl. 101.

*J. M. Pile*, for defendant in error, cited Warder *v.* Tainter, 4

Watts 270; Hartman v. Ogborn, 4 P. F. Smith 120; Colley v. Latimer, 5 S. & R. 211.

The opinion of the court was delivered, March 4th 1872, by

AGNEW, J.—If this case stood upon the aspect of the judgment alone, after a return of two *nihils*, it would be governed by Warder v. Tainter, 4 Watts 270, and Hartman v. Ogborn, 4 P. F. Smith 120. The return of *nihil habet* to two successive writs of scire facias are held to be eqivalent to a return of *scire feci;* and *scire feci* implies that the defendant is alive; for otherwise the sheriff ought to have returned *mortuus est.* This is purely technical, but it is necessary to protect persons buying at sheriff's sale on the faith of the judgment. The technicality, however, cannot reach beyond this immediate purpose of supporting the judgment in a collateral proceeding. To carry the presumption of life beyond the judgment and into the execution, would defeat the express prohibition of a statute, overturn the system provided for the estates of decedents, and disregard our own recent decisions. Robt. Barnet, Jr., died before the levari facias issued in this case: Indeed, his death was suggested on the record three weeks before the entry of judgment, and ought to have prevented judgment. This, however, is immaterial, as we have seen the presumption of life lasted until the judgment was entered, and the suggestion is mentioned only as showing that the fact of his death was well known. The fact that he was dead when execution issued, is one which no art can hide, or fiction should withhold from the judicial mind; unless we choose to be judicially blind and refuse to see the statute which stares us in the face. This we cannot do. The 33d section of the Act of 24th of February 1834, has received a judicial interpretation heretofore in Cadmus v. Jackson, 2 P. F. Smith 295. The portion which concerns us reads as follows: " No *execution* for the *levy* or *sale* of any real or personal estate of any *decedent* shall be issued upon *any* judgment obtained against him in his lifetime, unless his personal representatives have been first warned by a writ of scire facias to show cause against the issuing thereof, notwithstanding the *teste* of such execution may bear date antecedently to his death." It is obvious that the case of a decedent, actually dead, but technically alive at the time of judgment, cannot be worse off than that of one alive at judgment but dead before execution. On the contrary, it demands the benefit of the statute more strongly than the latter, for had the personal representative been warned, he might have had the judgment reversed or set aside, and thus prevented a sale and sacrifice. Of this section the revisers said in their report: "It is intended to abolish a fiction of the courts, and to prevent the inconvenience and injustice which might happen from the levy of an execution upon the estate of the decedent without notice to his executor or

[Taylor *v.* Young.]

administrator." The 33d section does not stand alone, but in the midst of a series of sections from the 26th to the 36th, which make a perfect system for the prosecution and defence of actions and executions, after the death of a party, evincing the mind of the legislature, to draw a broad boundary between the estates of the living and the dead. Indeed this characterizes the whole Act of 24th February 1834. In this the law follows nature. As the green tree, growing, expanding and yielding its fruit, differs from the dead trunk, which lies and decays where it falls, so the estate of the living differs from that of the dead man. The estate of the latter drops into a fixed and unalterable mould; new rights attach, new agents begin to act, and new rules to·regulate it. The intention to protect the estate after death from the pursuit of creditors seeking individual success at the expense of each other, and of the heirs, legatees and next of kin, is further developed in the 34th, 35th and 36th sections, which require notice of claims to the parties in interest, enjoin against execution at common law, and remove the sale and settlement of the real as well as the personal estate into the Orphans' Court. It is only by a view of this entire statutory system we can really comprehend the full force of the decision in Cadmus *v.* Jackson, *supra.* It is there held under the 33d section, that execution *cannot* issue against the estate of a deceased defendant until his personal representatives have been warned by a scire facias. Said C. J. Woodward, "It is not a case of irregular process, but it is a defect of power to take any process of execution before scire facias, and nothing can be more imperative than the denial of this power. Then it is the case of *void* process, for surely that which is expressly forbidden by law must be void process." Again, he says, "sheriffs' vendees buy at their peril. Not only must there be a legal judgment but a legal execution also, to make a sheriff's sale valid." Cadmus *v.* Jackson is a well-remembered case, and was argued elaborately, and the opinion carefully written. The invalidity of the execution is supported also by the case of Wood's Executors *v.* Colwell, 10 Casey 92, holding that if the defendant die after a levy and condemnation under a testatum fi. fa. no venditioni exponas can issue thereafter without a scire facias against his personal representatives. The court below drew a very plausible distinction between a venditioni exponas following the writ on which the levy is made, and a writ, such as a levari facias, which commands the immediate levy and sale of the premises; but this court held that the venditioni exponas, being a writ for the *sale,* fell. directly within the 33d section of the Act of 1834. In this case, therefore, unless we set at nought the statutory system for the regulation and settlement of the estates of deceased persons, and overrule a solemn decision of this court, made only six years ago, we must hold that the sale in this instance, under the levari facias, without a scire facias first

[Taylor v. Young.]

to bring in the personal representatives of Robert Barnet, Jr., is void, and that the court below erred in holding differently.

The judgment is reversed and a *venire facias de novo* is awarded.

A petition of persons not interested in this particular case, was afterwards presented to the Supreme Court, representing that the result of such an application of the 33d section of the Act of February 24th 1834 as was declared in the foregoing ruling of the court, would tend to unsettle titles, &c. The Supreme Court thereupon ordered that the case should be again argued.

It was reargued at Harrisburg, May 28th 1872, before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

*I. N. Brown* (with whom were *T. F. Jenkins* and *T. R. Elcock*), for plaintiff in error.

*J. M. Pile*, for defendant in error.

*G. W. Biddle* (with whom were *W. H. Rawle*, *H. Wharton* and *E. K. Price*), for the petitioners.

Opinions were delivered by Thompson, C. J., and Agnew, J., both of which were directed to be reported.

The opinion of the court was delivered, July 3d 1872, by

THOMPSON, C. J.—It has long been settled in this state that two returns of nihil to successive writs of sci. fa. sur mortgage, are equivalent to a return of scire feci : Warder *v.* Tainter, 4 Watts 274 ; Chambers *v.* Carson, 2 Wh. 365 ; Compher *v.* Annewalt, 2 Watts 490, and this whether in fact the mortgagor were dead or alive. So in principle is Ogborn *v.* Hartman, 4 P. F. Smith 120. There is no diversity of opinion about this on this bench. It results as Kennedy, J., said in Warder *v.* Tainter, from the application of the practice at common law in revivals of judgments *post annum et diem.* The Act of 1705, which regulates proceedings to foreclose mortgages, gives the scire facias as the appropriate writ for the purpose, and the practice since the passage of the act, one hundred and sixty-seven years ago, has made it effective by two returns of nihil when there could be no personal service on the mortgagor. Judgments had thereon, consequently are and always have been, conclusive of the life of the mortgagor at the time of the returns, so that the contrary is not permitted to be averred as against the judgment. It may be granted that this is a fiction, but *in fictione juris æquitas existit.* This presumption was necessary in order to give entire efficiency to the Act of 1705. The preamble of the act sets forth its purpose and the reasons for

[Taylor *v.* Young.]

its enactment, viz. : That " divers persons have mortgaged lands and tenements in this province for securing the payment of moneys, and some of them have *died* before the time of payment, and left others to succeed them, and these have proved insolvent, and others have neglected to pay the mortgage-money, and so mortgages have become no effectual security," &c. The act was therefore passed to remedy and meet each and every of these contingencies, and the scire facias sur mortgage was given as the process.

It was designed as a remedy against the mortgaged property equally in cases of inability to pay, or of neglect, or death. Of course the proceedings being substantially *in rem*, it became necessary to give the process which in form is *in personam*, the effect of a personal service. This was a fiction to be sure, but necessary, as just said, to give full effect to the Act of 1705. It was a remedial statute and to be construed and executed so as to remedy the evil calling for its passage.

In the case in hand, no difficulty exists about the entire soundness of the judgment, notwithstanding the death of the mortgagor suggested on record : Warder *v.* Tainter, *supra.* The two nihils overrule the effect of that. The judgment given was, therefore, as legal and valid, as if it had been obtained on personal service.

 Just here, however, it is thought a difficulty arises upon the plaintiff's title, the scire facias for the sale of the mortgaged premises having issued without proceedings under the 33d section of the Act of 24th February 1834.

That section reads that " no execution for the levy or sale of any real or personal estate of any decedent, shall be issued upon any judgment obtained against him in his lifetime, unless his personal representatives have been warned by a writ of scire facias to show cause against the issuing thereof, notwithstanding the *teste* of such execution may bear date antecedently to his death."

The generality of these words creates a seeming difficulty, at least, in regard to the sale of the mortgaged property in this case, without an observance of the provisions of this section. But from the nature of the provisions of the Act of 1705, and of the purposes of the remedy therein provided, as declared in the preamble ; and the object and purpose of the 33d section of the Act of 1834, already referred to, we think we are mainly relieved of difficulty on this point. Indeed by reference to decisions of this court subsequently to the passage of the Act of 1834 on the very question before us, we think we may consider ourselves entirely relieved.

The object and purpose of the provisions of the 33d section of the act as explained by the revisers themselves in their report, 2 Park. and John. 758, was " to abolish a fiction of the courts," namely, that executions have relation to and are tested as of the first day of the preceding term, although in fact issued subsequently, and even after the death of the decedent. This fictitious *teste*

[Taylor v. Young.]

put it in the power of a judgment-creditor by execution to sweep away all decedent's personal property, for the lien of the execution would be coeval with its *teste*. This was subversive of the equitable rule of distribution among a decedent's creditors provided by the Act of 1794. The incongruity was first noticed by the court in Leiper v. Levis, 15 S. & R. 108, and the 33d section of the Act of 1834 was framed by the revisers to give legislative force to the suggestion of the court and to remedy the mischief. The revisors say that this was the object of the section: vide Park. and John. Dig. *sup*. The section was therefore not intended for cases in which the mischief could not exist, namely, to specific liens in the nature of mortgages. In such a case the execution has no operation as lien or a process of seizure, it is simply an authority to sell the pledged estate, after it has been judicially ascertained that the period of redemption has expired. Certainly we are not to give the section an application to a purpose not intended. It is not so said in the act, and we think it is not so by necessary implication. It is fair to presume that the section was adopted by the legislature for the reasons given by the official revisers and framers of it. It is not a conclusive presumption, it is true, but it is a reasonable one. Thus we see the purpose of the section, and that it did not look to proceedings for the foreclosure of mortgages.

How stand the decisions of this court on the applicability of the section to the case in hand, and cases of like nature?

Chambers v. Carson, 2 Wh. 365, was the case of a judgment *sur* mortgage *post* two nihils, followed by a levari facias and sale. An application was made to this court to set aside the judgment and the levari, on the ground of the death of the mortgagor prior to both, because proceedings under sections 33 and 34 of the Act of 1834, had not been taken, viz., to warn the decedent's personal representatives, and to call in the widow and heirs; these were distinctly the questions of the case. At Dec. Term 1836, the opinion of the court on these questions was delivered by Kennedy, J., who after his usual thorough examination, gives the conclusions of the court on the questions thus: "This being a proceeding upon the mortgage according to the Act of 1705, it is also therefore considered as not coming within the provisions of the 25th, 33d and 34th sections of the Act of the 24th of February 1834, which have been referred to by the counsel of the defendant, in order to show that the course adopted and pursued here falls short of what ir required by these sections. The sci. fa.'s in that case issued after the passage of the Act of 1834. The fact that they were writs of *sci. fa. post annum et diem* upon a prior judgment sur mortgage makes no difference in principle." In M'Millan v. Red, 4 W. & S. 237, this decision was cited approvingly and applied to the case then in hand. Rogers, J., in delivering the opinion of the court shows why and wherefore the 33d section of the act was passed, and says it was drawn in conformity with the views of this

[Taylor *v.* Young.]

court in Leiper *v.* Levis, to which we have already referred. After citing Chambers *v.* Carson, the learned judge goes on to say, "in that case it is ruled that a scire facias on a mortgage is not within the section (the 34th), and that it is not necessary to make the widow and heirs, or devisees, parties." "It frequently happens," he adds, "that from want of due precision in the language of Acts of the Legislature, or from some intrinsic difficulty arising from the subject of the enactment, different interpretations are given, not without plausible arguments in various judicial districts; and when this is the case we feel ourselves bound to avoid that interpretation which tends to unsettle titles."

The point of this decision is, that where the judgment is obtained in the *lifetime* of the decedent, which is the case on a return of two nihils, the widow and heirs need not be brought in in order to charge the real estate, and it also recognises the authority that holds that section 33 of the Act of 1834, is not applicable to executions on mortgages, shadowing forth the duty of courts where a statute may be subject to diverse constructions, viz.: That that one shall be adopted which will not disturb titles, which might occur under a different construction. If these sections are followed in cases where they are not required to be followed, and the widow and heirs are brought in, and the personal representatives are warned, when not necessary, the title is not affected thereby, for *utile per inutile non vitiatur*. But quite different would be the consequence where enough has not been done to make a complete title.

We are of opinion that the title is good in this case without a garnishment of the personal representatives of the mortgagor. There is an essential difference, we think, between a judgment and execution on a mortgage, and where the judgment is general and the execution operates in the first place on personalty. This we have already referred to. We have evidence in the books that the rule herein claimed based upon this difference, not only exists by the authority of this court, but by the practice in other courts. In Hare *v.* Mallock, 1 Miles 268, and Dundas *v.* Leiper, 1 Phila. 569, this is shown clearly; the last case shows the practice explicitly. Unchallenged, these cases, supported as they were by the rulings of this court, would fix a rule likely to be implicitly followed. In the District Court of this city, where suits on mortgages are more frequent than in all the courts of the city, the practice would soon permeate the system, as we are assured by eminent counsel it has done, entering as an element into vast numbers of titles, which, if changed by a decision of this court, would disturb, and perhaps, totally destroy many which have rested on the authority of the practice established by the courts. We ought, therefore, like our predecessors, even if the practice since the Act of 1834, in cases like this, were more doubtful than we regard it to

be, to avoid that interpretation of the law which would disturb titles resting on the faith of judicial decisions: Menges v. Dentler, 9 Casey 495.

The plaintiff in error opposes to these views, and to the cases referred to, two other decisions of this court, viz.: Wood v. Colwell, 10 Casey 92, and Cadmus v. Jackson, 2 P. F. Smith 295. It does not appear by either of these cases, that any change of the existing practice under the Act of 1705, as affected by the Act of 24th February 1834, was at all intended or contemplated. I do not regard the question as necessarily involved in either. It is not so said or argued by court or counsel; an analogy is all that is relied on to overturn precedent practice on the most vital point. The first of these cases arose on a testatum fi. fa. on a judgment upon an ordinary bond. Before the testatum vend. was issued the defendant died. The District Court of the city was of the opinion that a scire facias under the 33d section of the Act of 24th February 1834, to warn the personal representatives of the mortgagor in the case, was not necessary; this court held differently, and somewhat hesitatingly, it would seem from the wording of the *per curiam* opinion, reversed the order for the venditioni exponas. It was a debatable matter at best, under the decisions, but at all events, it was not process under the Act of 1705, providing for the foreclosure of a mortgage, which is a different thing in our opinion. The other case cited is Cadmus v. Jackson, which we think is also distinguishable in principle from the case in hand. Like the last, it did not arise on process for the sale of mortgaged premises, but was an execution on a judgment under the Act of Assembly for registered taxes. The fact is, the taxes had been paid; still there was a judgment remaining unsatisfied, and this was sufficient to support the sale. The property, which was valuable, was sold for $20. Young was dead when the writ issued, died in January 1860, and the writ of levari facias issued in February, without a sci. fa. to warn his personal representatives, and the property sold, as just stated. After this there was an order of sale by the Orphans' Court of the same property as Young's estate, and it was sold to Cadmus for $2725; this court held that the tax sale was void for want of a garnishment of the personal representatives of Young. I shall not discuss the point, whether it ought to have been declared void or voidable. I will consider the decision all right at present, on its own facts. All cases should be so read, and fewer errors would be committed by judges and lawyers. This was eminently the doctrine of the learned judge, who gave the opinion. The question in our case is not ruled by this decision; it was a different proceeding under different laws. We do not feel bound by a supposed analogy between the proceedings; the one was a sale of valuable property for a trifle of taxes; the case in hand is a sale under the Act of 1705, enacted, to make mortgages, as it says,

[Taylor *v.* Young.]

a better security for money.    Let the last cited case stand for the
class to which it belongs, but let it not become an aggressive prin-
ciple where it is alien.    It is very clear on authority (see *supra*),
and the practice, that the 34th section of the Act of 1834 is not
applicable to judgments on mortgages, and by parity of reason,
neither is section 33.    So on the authorities: Warder *v.* Tainter,
and Chambers *v.* Carson, *supra.*    But as already said, the appli-
cation of the section, if it had been possible, would not here have
hurt the title, but was not necessary.    We might refer to various
other grounds set up against the plaintiff in error, but we regard
the views above presented as sufficient.    We feel sure that in the
restricted sense of the Act of 1834, which we have given as regards
proceedings on mortgages under the Act of 1705, we are in har-
mony with the practice heretofore on the subject, leaving undis-
turbed titles originating under it, and also saving intact, the act
in its application to general judgments operating indiscriminately,
on both personal and real property and executions thereon.

Our silence on the subject of ground-rent covenants is not to be
construed into an adjudication that we think that a different prin-
ciple is to be applied to judgments obtained thereon on two nihils ;
we do not deal with the point, because it is not before us in this
record.

Judgment affirmed.

Agnew, J., "in support of the former opinion of the court."

This case was decided by three of us in February last, Judges
Thompson and Read being absent.    A re-argument was ordered,
and our first decision is now to be overturned.    One ground of
reversal, is a supposed distinction between a judgement *sur* mort-
gage after a return of two *nihils*, and other judgments.    It is
therefore said that the 33d section of the Act of 24th February
1834, does not apply to the case of a judgment upon a mortgage.
But that section has reference to the *execution* only, and a judg-
ment *sur* mortgage is directly within its letter, and as I shall show,
within its spirit also.    The section is broad, express, and *unqualified*,
and in these words : " *No execution* for the *levy* or *sale*, of *any* real
or personal estate, of *any* decedent, shall be issued upon *any judg-
ment*, obtained against him in his lifetime, unless his personal
representatives have been first warned by a writ of scire facias, to
show cause against the issuing thereof, notwithstanding the *teste*
of such execution may bear date antecedently to his death."    The
purpose of this law is to prevent the robbery of dead men's estates,
by means of extinguished or satisfied judgments of any kind what-
ever, raised up by vampire claimants, for purposes of fraud.    It
is intended to reach such violations of the rights of the dead of
which this court said : " It is but a small matter in such a robbery
as this case presents, whether the debt of $60 has been paid once

[Taylor *v.* Young.]

or twice before the proceedings on the sci. fa., which have ended in taking from the heirs of Nixon their whole property, and putting it in the pocket of one who had no claim on their ancestor:" Fetterman *v.* Murphy, 4 Watts 424. It is perfectly clear to an impartial mind, that in the letter, the spirit and the reason of the act, it makes no difference whether the judgment, on which execution issues to sell a dead man's property, was on a mortgage, a mechanic's claim, a bond or other debt. It is the *debt* which the law regards, not its form. Each and every form is capable of extinguishment and satisfaction. A sale on an accompanying bond, or on a prior lien will extinguish the mortgage ; or the party may pay it. Is the debt just? That is the question. The lips that once could answer are now sealed to human call. They can answer only at another bar. Thrusting its shield before the face of rapacity and fraud, and speaking in the tones of justice and mercy, the law says to us, a dead man's estate shall not be sold without a warning to those who succeed to his rights. Why then should we not follow our first decision? Wherein does a mortgage-debt differ from a judgment-debt, a mechanic's lien, or a recognisance? We have repeatedly decided that the registry of a mortgage is not a record ; and the plea to it is *non est factum* and not *nul tiel record.* But a judgment in the Common Pleas, whether by trial, by confession, default or *nil dicit,* is a true record. On what principle of law or good sense shall such a judgment, or a judgment of revival upon two *nihils,* be within the law forbidding the execution without warning the personal representatives, and yet a sci. fa. sur mortgage on two *nihils* shall not be ? Can any one point out a reason why the registry of a mortgage stands higher than the record of the Common Pleas? Or why the judgment of revival of a judgment after two *nihils* is not equal in grade to a judgment on a mortgage after two *nihils?* It is said that the latter is a proceeding *in rem.* So much the greater reason that the personal representatives should be warned if the dead man had no notice. But by the express terms of the Act of 1705, the sci. fa. must be served on the heirs, executors or administrators, when the mortgagor is dead. The demand under the Act of 1705 is therefore personal, and the 33d section of the Act of 1834 applies directly to the case. Can any one tell me what inferior virtue there is in a judgment on a mechanic's claim, or a revival of a judgment on a bond, after a return of two *nihils,* or what superior force a return of two *nihils* has in the case of a mortgage? Let me take a test case ; a judgment in debt on a bond secured by the mortgage after actual service, and a judgment sur mortgage for the same debt, after a return of two *nihils.* They are for the same thing. In one the man was actually warned, in the other he was not. A sale on the bond debt will discharge the judgment on the mortgage:

[Taylor *v.* Young.]

7 Watts 675; 8 Id. 215. Why should the judgment on the bond be within the law, and the judgment on the mortgage be taken out of the act by mere judicial construction? There is no inferiority in the bond judgment. It is a true record debt, and was obtained after actual service by trial or confession; while the mortgage judgment is without notice, and is founded on a mere implication of service. Can any logic be less convincing than that which makes two *nihils* better than service, or ranks a default higher than confession or trial? The attempt at distinction, it seems to me, is almost grotesque. You cannot sell a dead man's estate, not even his fugitive personalty, if he were actually served and alive at the judgment: but you may sell his realty, the very house over the heads of his widow and infant children, if he was not served, and was dead and unconscious of the proceedings when two *nihils* were returned. Such is the wonderful power of two *nihils*. Admirable logic. The estate of the man naturally alive at the judgment is protected by the law, but that of the naturally dead and only constructively alive, is outlawed. This may be law; but I cannot consent to rob a statute of its plain meaning, or my judgment of its candor, or to overturn two previous decisions of this court, on such reasoning. When the law speaks to us in the voice of the statute and of two decisions, and says a dead man's estate shall not be sold without first warning his personal representatives, I feel that I cannot disobey this plain command. In such a case, *stare decisis* is a maxim as sound as it is safe.

It is said in the next place that the practice in Philadelphia has not conformed to the law. But where is the evidence of such a general custom? No cases have been collected to sustain the assertion. No trace of such a practice has been cited to us from the digests, from the local decisions, or from the records of the courts, except a single case, that of Wood *v.* Colwell, where this court twelve years ago corrected the decision, and made it conform to the statute: 10 Casey 92. The counsel assumed to speak for the whole state. But with a knowledge of the practice ever since the statute was enacted, I have never heard of a distinction between a mortgage and other record debts in regard to *selling* the estates of dead men. If in Philadelphia a *general* custom has prevailed contrary to the statute, I would regard it as within the maxim *communis error facit jus*. But for the very best of reasons I cannot concede a general custom. The bar of Philadelphia is too learned and intelligent to admit of it. Such a bar would not overlook the language of a statute so distinct, so positive and unqualified; framed by eminent revisers of their own number, and referred to in their comments on the act, as intended to abolish a fiction, and to prevent *inconvenience and injustice*. The Act of 1834 has been thirty-eight years on the statute book, and if such

[Taylor v. Young.]

a practice had prevailed there would have been gentlemen to test it long ago. They were invited to do so by Wood v. Colwell, *supra*, decided in 1859, and Cadmus v. Jackson, 2 P. F. Smith 295, decided in 1866, giving to the statute a contrary interpretation. When a genuine practice or general custom has prevailed there is no difficulty in producing the proof. The industry of counsel procured a list of nine hundred acts to establish a particular usage in Norris v. Clymer, 2 Barr 277. It is not credible that any general usage, as to mortgages, has prevailed contrary to the words of the act and the decisions of this court, and yet no lawyer has been found to put in a protest, and bring the practice up to be reviewed, before the present time. Among so large and learned a bar how could such a practice prevail in the teeth of a statute without objection? I can readily conceive, that for a purpose, or by a blunder, some properties have been sold in this way; and that a decision of this court will be a convenient mode of assuring the title. But it is not our place to make laws to correct professional mistakes. I prefer, myself, not to stand as a voucher to such a common recovery. Standing on the time honored maxim, *stare decisis*, I cannot regard this decision as a precedent to be followed hereafter, against the letter and spirit of the act, and our two former decisions.

The foregoing was written before I heard the opinion of the Chief Justice. With great respect and just deference to the learned Chief Justice, I must say his opinion is unsatisfactory to my mind, in point of logic and logical accuracy, though, like everything from his able pen, it is not without seeming force. But when the Chief Justice applies Warder v. Tainter, Chambers v. Carson, Hare v. Mullock, and other cases of the same class, to the question before us, he is not borne out by the cases themselves. That question has no reference to the judgment on the mortgage, and the effect of two nihils, but relates simply to the *right to issue execution* against the property of a *deceased* mortgagor without warning his personal representatives by scire facias. It is evident that in Chambers v. Carson, the case most relied on by the Chief Justice, as to the execution, he was misled by what Justice Kennedy said were the *objections* made under the twenty-fifth, *thirty-third*, and thirty-fourth sections of the Act of 1834. There was no decision upon the 33d section, for the best of reasons, the plaintiff had complied with its provision by issuing his sci. fa. against the personal representatives. The decision was on the 34th and 39th sections. See the first report of the case where the parties defendant are named: 2 Wharton 9. This is referred to in the first line of the second report on p. 375; and also by the counsel on pp. 368, 369. Messrs. Bayard and Sergeant said:—
" Then as to the Act of 1834 referred to : in the first place it

[Taylor *v.* Young.]

cannot control this case, for it did not go into operation until the first of October 1834, whereas the first writ of sci. fa. was issued in May and returned in July 1834, and the alias necessarily conformed to it.   But if any part of the act could apply it would be the 33d section, which requires a sci. fa. to issue to the personal representatives, *as was done in this case*, and not the 34th, which applies only to cases of actions originally brought against executors, &c., where the land of the decedent is to be charged; and not to the case of a sci. fa. on a judgment against the decedent in his lifetime, or upon a mortgage given by him." Thus Chambers *v.* Carson does not touch the question before us in the remotest degree, and the argument founded upon it is a mistake.

Equally inapplicable is the case of Hare *v.* Mullock, 1 Miles 268.   The decision there was that the publication required by the 34th section of the Act of 1834 did not apply to a sci. fa. sur mortgage.   The reason is obvious, and is that given in the extract of the argument of counsel above in Chambers *v.* Carson, to wit, that the 36th section applies only to *original* actions against the personal representatives alone when it is intended to *charge* the real estate; while in the case of a mortgage the real estate is already charged.   There is not a word in the case to recognise the fallacy that the personal representative is not to be warned before *execution*, in order that he may show extinguishment or satisfaction of the mortgage.   Both the Act of 1705 and 1834 require this.

Dundas *v.* Leiper, 1 Phila. 569, is quite as wide of the mark. There the question arose on the 35th section of the Act of 1834, giving power to the court to stay execution until an application should be made to the Orphans' Court, for a sale by the executor or administrator.   The decision is not upon the 33d section, and is questionable on the 35th section, for the reasons for staying a forced sale on a levari facias until a sale should be made on the more beneficial order of the Orphans' Court, are quite as applicable to judgments on mortgages as to any other judgments.   In not a single case has it been decided that the 33d section relating to the *execution* is inapplicable to a levari facias on a mortgage. The present decision stands, therefore, where I have placed it, as contrary to the letter and spirit of the section, and to the interpretation put upon it by this court in Colwell *v.* Woods and Cadmus *v.* Jackson.