## Radnor Building & Loan Assn. *v.* Scott et al., Appellants.

*Deeds—Reformation — Boundaries — Descriptions — Mistake — Equity.*

1. Findings of fact by a chancellor that a mutual mistake had been made in the description in a deed, will be sustained, if supported by competent evidence.

2. A court of equity has jurisdiction to reform a deed where there has been a mutual mistake in the description therein of the land intended to be conveyed.

3. If an error occurs as to the identity of the property itself, reformation cannot be had, although the contract may be rescinded, but where the inaccuracy is not as to the identity of the property, but a misdescription of it in the conveyance, reformation may be had.

4. If a mutual mistake has been made as to the description, relief will be granted, although the defendant denies that an error was made.

5. Where a person purchases two lots, begins erection thereon of a dwelling, and subsequently takes a deed in which by mutual mistake two lots are designated adjoining those on which the house was erected, such person may compel a conveyance to him of the lots on which the building was erected on reconveyance by him of the other two lots, and payment of any excess in the market value of the lots which defendant is ordered to convey.

6. Failure to have a survey made when the money was advanced, is not such negligence as to prevent the securing of relief.

*Sheriff's sale—Sheriff's deed—Defects—Voidable proceedings— Effect of acknowledgment and delivery.*

7. If alleged defects, in a proceeding leading up to a sheriff's sale, do not appear on the face of the record, the proceeding is voidable and not void, and the acknowledgment and delivery of the sheriff's deed, protects the purchaser.

Argued February 19, 1923. Appeal, No. 209, Jan. T., 1923, by defendants, from decree of C. P. No. 1, Phila. Co., Sept. T., 1920, No. 9593, on bill in equity, in case of Radnor Building & Loan Assn. v. Forrester H. Scott and Helen L. Scott, devisees under will of John H. Scott, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for reformation of deed. Before SHOEMAKER, P. J. The opinion of the Supreme Court states the facts. Decree for plaintiff. Defendant appealed.

*Error assigned,* inter alia, was decree, quoting it.

*James F. Boylan,* for appellant.—A court of equity has no jurisdiction: Duncan v. Iron Works, 136 Pa. 478; Saunders v. Racquet Club, 170 Pa. 265; Llewellyn v. Coal Co., 224 Pa. 66.

The contract cannot be reformed; there is no legal mistake: Du Bois Borough v. Water Works, 176 Pa. 430; Cooper v. Ins. Co., 50 Pa. 299.

Appellee is barred by its own negligence: Youngstown Electric Light Co. v. Poor Dist., 21 Pa. Superior Ct. 95.

Appellee's title is bad, hence there can be no exchange: Lanning v. Pawson, 38 Pa. 480; Spencer v. Jennings, 114 Pa. 618; Anschutz v. Miller, 81 Pa. 212.

*J. S. Freeman,* for appellee, cited: Trexler v. Fisher, 130 Pa. 275; Piacentino v. Young, 272 Pa. 560; Volk v. Volk, 272 Pa. 378; Colwes v. Meyer, 272 Pa. 323.

OPINION BY MR. JUSTICE SADLER, March 19, 1923:

Mary A. Benson agreed to buy a lot of ground from John H. Scott, located on what was known as the Bonsall tract, in Delaware County. The land had not been acquired by the proposed grantor at the time the agreement was executed, July 4, 1908, and it in no way described the boundaries. On the same date, Edward C. Benson, the husband, purchased a property adjoining, his wife acting as agent for him in the transaction. The court below has found that the payments for the latter were fully made by Mary, who became the equitable owner.

The Bensons went upon the ground which they believed had been bought by them, and began the construction of a dwelling. This was nearly completed on December 8, 1909, when a deed was demanded and received from the seller. It was prepared by the vendor himself, and conveyed to the wife lot 415, referring to the number upon the plan, prepared in the preceding January, after Scott had acquired title. At that time, she had also paid in full for lot 414, though no transfer of it was made. When the house was built and the deed given, the Bonsall tract was unimproved, there being but one street laid out, and no definite marks on the ground designated the location of the various parcels. The court below

found it was the intention of the parties to deed the land upon which the residence had been constructed. As a matter of fact, a survey showed the structure was placed on lots numbers 416 and 417, which adjoined. Evidently, when the deed was asked for, it was intended that the land upon which the building had been erected should be transferred, though an error was made in the designation of the number as it appeared on the plan. Clearly, Mary Benson must have been mistaken as to the property named, and the same can be said of Scott. To hold otherwise, and to find that he intentionally deeded a lot other than that on which the grantee had constructed her dwelling, and for which purpose the purchase was made, would convict him of fraud. It is better to say, as did the court below, that he was mistaken.

After the house was practically completed, the Radnor Building and Loan Association advanced $2,000, which was secured by bond and mortgage on lot 415, executed by husband and wife on December 14, 1909, and duly recorded. Later, judgment was entered on the bond, and an execution issued. Both 414 and 415 were sold, and the complainant became the purchaser. Possession of the property was taken by it in 1916, and leased to tenants, who resided thereon until the institution of the present proceeding. In 1919, a sale was effected, and a search by the title company disclosed the fact that, through error, the building was erected on adjoining land. A bill was filed asking for reformation, and, after hearing, a decree was entered directing that the devisees of Scott, who had become owners by virtue of his will, convey lots 416 and 417, upon which the house was built, and that the complainant reconvey lots 414 and 415, and, in addition, pay such sum as would measure the difference in market value, the former being twenty-five feet greater in depth than those called for by the deed of Scott to Benson. From the order made, this appeal has been taken, and many assignments of error have been filed, largely directed to findings of fact which, of course,

are to be sustained if supported by competent evidence: Wolf v. Christman, 202 Pa. 475.

It is first insisted that the proper remedy of the complainant was an action in ejectment, though he was in possession. In some cases defects in descriptions, such as here claimed, have been reached equitably in such a proceeding (Trexler v. Fisher, 130 Pa. 275; Huss v. Morris, 63 Pa. 367), or the error has been corrected by a bill for rescission, after tender back of the benefits received (Wolf v. Christman, supra; Babcock v. Day, 104 Pa. 4), yet the right to reformation in equity, if mutual mistakes appear, is unquestionable: Baab v. Houser, 203 Pa. 470; Shedwick v. Prospect M. E. Church, 160 Pa. 57. It is to be noted that power was expressly given to the Courts of Common Pleas of Philadelphia County to entertain jurisdiction on the ground of fraud, accident or mistake (Act June 13, 1840, section 39, P. L. 671), which legislation was subsequently extended to the State at large (Act February 14, 1857, section 1, P. L. 39). This was not a case merely of a dispute as to title,—there was no doubt as to what was actually conveyed by the Scott deed,—but the purpose was to correct the inaccurate description given therein, and make it conform to the intention of the parties. The court, therefore, properly overruled the demurrer, which raised the question in limine, and refused, on final hearing, to dismiss when the same objection was renewed. Appellants admitted on argument that, if ejectment had been brought, the evidence would have been sufficient to sustain a verdict for plaintiff. It follows that the findings of the trial judge on the issues of fact, reaching a like conclusion, must be sustained, and makes necessary a consideration only of the other errors alleged.

It is urged the mistake, if existing, was not mutual, and, therefore, the decree entered is not justified. The rule is that if error occurs as to the identity of the property itself, reformation cannot be had, although the contract may be rescinded, for there has been no meeting of

minds by the parties; where the inaccuracy is not as to the identity of the property, but a misdescription of it in the conveyance, the contrary is true: 23 R. C. L. 335. "A mistake exists when a person, under some erroneous conviction of law or fact, does or omits to do some act which, but for the erroneous conviction, he would not have done or omitted. It may arise either from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence. Where the mistake arises from imposition or misplaced confidence, relief may be had on the ground of fraud. Where it arises from unconsciousness, ignorance or forgetfulness, redress may be obtained in some cases, and solely on the distinct equitable basis of mistake": Nulton's App., 103 Pa. 286, 291.

The court below has found that Mary Benson paid for two lots, though the agreement to purchase the one was in the name of the husband, and a deed for No. 415 was made on December 8, 1909, after the dwelling house had been practically completed. The money advanced by the building and loan association was used to pay the contractor and the materialmen. After completion, the Bensons lived therein for several years, paying the taxes and, subsequently, the complainant purchased both parcels at the sale on execution, and retained undisputed possession under the sheriff's deed which it received. At the time the dwelling was erected, nothing appeared on the ground to indicate definitely where the lots were located, and the 12th finding expressly declares that the building was erected "through the mutual mistake of the parties to the transaction." No claim was made by the grantor of any interest in the property during his lifetime. It seems clear, and the court was justified in so finding, that Mary Benson desired a conveyance of the land which she was then occupying, and upon which her house had been constructed. Scott, when he drew and executed the deed, knew that the building was practically completed, and it is fairly to be assumed that he was aware of the situation, and that the grantee was to re-

ceive a deed for the lots of which she had taken posses-
sion. Under such circumstances, where a mutual mis-
take in description has occurred, reformation of the deed
will be directed (Shedwick v. Prospect M. E. Church,
supra; Cook v. Liston, 192 Pa. 19; Trexler v. Fisher,
supra; Wolf v. Christman, supra; McKelway v. Armour,
10 N. J. Eq. 115), notwithstanding an express denial by
the defendant that an error was made: Baab v. Houser,
203 Pa. 470. In view of the findings of fact, which are
justified by the evidence, direct and circumstantial, sub-
mitted at the hearing, and applying thereto the settled
legal principles, the correction of the description was
properly ordered. We are not convinced of the existence
of such negligence on the part of the complainant, based
on its failure to have a survey made when the money was
advanced, as to prevent the securing of relief. The
decree fully protected the rights of the defendants, since
the plaintiff is required to deed lots 414 and 415 by a
good and sufficient conveyance, and also to make pay-
ment of any excess in the market value of the two lots
which the defendants were ordered to convey.

Appellants further argue that the decree in the pres-
ent case cannot be enforced, since it is required therein
that a good title be conveyed by complainant for the lots
Nos. 414 and 415, which it purchased at the sheriff's sale.
This contention is based on testimony that the mort-
gagors were both dead at the time of the entry, in 1915,
of the bond secured by the mortgage given in 1909, and
that, therefore, the proper parties not having been
brought upon the record, the sale on the judgment ob-
tained was ineffective to pass title, though it related
back to the date of the mortgage itself: Morris v. Camp-
bell, 186 Pa. 589; DeHaven v. Landell, 31 Pa. 120; Hos-
tetter's Petition, 57 Pa. Superior Ct. 601; M'Call v.
Lenox, 9 S. & R. 302. The sheriff's deed for the property
does not disclose a situation such as averred. It may
be the Bensons were both deceased, and relief might
be granted, under such circumstances, by an appropriate

proceeding instituted by their personal representatives, or heirs: Stevenson v. Virtue, 13 Pa. Superior Ct. 103; Sleeper v. Hickey, 26 Pa. Superior Ct. 59. It is unnecessary, however, to discuss the applicability of the Act of February 24, 1834, section 33, to the case at bar (cf. Taylor v. Young, 71 Pa. 81). If the facts upon which the one complaining depends do not appear on the face of the record, the proceeding is voidable and not void (Yaple v. Titus, 41 Pa. 195), and, in such case, the acknowledgment and delivery of the sheriff's deed protects the purchaser: Shannon v. Newton, 132 Pa. 375; Shannon v. Walker, 132 Pa. 383; Clough v. Welsh, 229 Pa. 386; McLanahan v. Goodman, 265 Pa. 43. So far as the record shows, the proceedings were regular. The return of the sheriff, as to the manner of service, is not before us, but presumably he complied with statutory requirements. The decree which has been entered by the court below requires that the title to the property to be exchanged shall be "clear and indefeasible," and this may be obtained by further proceedings, if it be necessary.

The decree is affirmed at the cost of appellants.