## East Girard Savings and Loan Association v. Dinerman

*Maxwell Strawbridge*, for plaintiff.
*Anthony Giangiulio*, for defendant.

FORREST, P. J., May 27, 1965.—East Girard Savings and Loan Association has brought this action in equity to adjudicate the priority of liens on property owned by Cross Realty Company. Norman Dinerman, defendant, is a judgment holder of record against Cross Realty Company. East Girard claims their mortgage lien should be senior to Dinerman's judgment lien and that the two lien holders so agreed. It is further claimed that although it was so agreed, the written and recorded agreement does not indicate that Dinerman subordinated his lien to East Girard, but rather that he postponed his lien to the interests of Frankford Trust Company. Thus, on the record, Dinerman's lien takes priority over that of East Girard. Plaintiff seeks to rectify this situation and prevent unjust enrichment by defendant.

## FINDINGS OF FACT

1. Plaintiff is a Pennsylvania corporation, duly existing and chartered by the Commonwealth of Pennsylvania as a savings and loan association.

2. Defendant is an individual residing at 616 Farriston Drive, Wynnewood, Pa.

3. Prior to October 28, 1963, real estate known as Eleanor Court Apartments, situate at 133 Byberry

Road, Hatboro, Pa., was owned by the Cross Realty Company.

4. Prior to the relevant time in this transaction, defendant, Norman Dinerman, was the holder of a judgment filed January 9, 1963, in the Court of Common Pleas of Montgomery County, as no. 63-235, in the principal sum of $66,000 against Cross Realty Company.

5. Also prior to the relevant time in this transaction, plaintiff held a first mortgage interest against the premises of Cross Realty Company, mortgagor, for the principal sum of $235,000. This mortgage interest was recorded prior to the judgment of defendant.

6. The Eleanor Court Apartments desired to obtain a $50,000 loan for the addition and improvement of the apartment structure and, pursuant to that desire, initially arranged for financing with the Frankford Trust Company.

7. The proposed loan procedure required Frankford Trust Company to satisfy the first mortgage held by plaintiff and, in turn, to succeed to the interest of the first mortgagee to the extent of the first mortgage of $235,000, plus the additional advancement of $50,000.

8. On or about September 24, 1963, Thomas R. Milligan, an assistant title officer of Commonwealth Land Title Insurance Corporation, prepared a subordination agreement which provided that defendant would agree to subordinate his judgment lien to the interest of Frankford Trust Company.

9. Thomas R. Milligan was the agent of neither party, but was retained by Cross Realty Company to prepare the subordination agreements.

10. While the initial understanding was that Frankford Trust Company was going to make the loan, it was subsequently agreed that East Girard Savings and Loan Association would increase their mortgage to $285,000.

11. Plaintiff agreed that it would mark the first mortgage satisfied and accept a new mortgage in the increased value of $285,000, provided the subsequent lienors would all agree to subordinate their liens to the lien of plaintiff's new mortgage.

12. All the junior lienors agreed to the execution of such agreements.

13. Defendant executed the original agreement as prepared by Milligan, which still referred to Frankford Trust Company, rather than East Girard Savings and Loan Association, on October 18, 1963.

14. On or about October 18, 1963, defendant's attorney returned the executed agreement to Milligan with a letter, which read as follows:

"Dear Tom:

"Enclosed please find executed agreement to postpone lien of Judgment in the above matter.

"It is my understanding that the first mortgage is to be increased to $285,000.00 and that the judgment preceding the judgment held by Norman Dinerman is to be satisfied.

"Kind regards,
"Very truly yours,
"Stanley Schlesinger"

15. On or about October 28, 1963, Milligan learned that the first mortgage was not to be satisfied and that plaintiff, rather than Frankford Trust Company, was to advance the additional funds and take the mortgage.

16. On that date, Milligan telephoned defendant's attorney and advised him of the changes in the transaction, and requested defendant's attorney to acknowledge his client's acceptance of the changes.

17. Defendant's attorney confirmed by letter dated October 28, 1963, as follows:

"Dear Tom:

"It is agreeable with us that you use the agreement to postpone the lien of judgment executed by Norman

Dinerman with the understanding that the first mortgage is to be increased to no more than $285,000.

"Very truly yours,

"Stanley Schlesinger"

18. The said written agreement as incorrectly executed was subsequently recorded with the Prothonotary of Montgomery County on November 6, 1963.

19. It was the intention of plaintiff and defendant that defendant's lien would be subordinated to the new mortgage lien of plaintiff for $285,000.

20. Both plaintiff and defendant were under a common misapprehension that the document used at settlement was effective to so subordinate defendant's lien.

21. Upon discovering the mistake of the parties, plaintiff attempted to have defendant execute a subsequent subordination agreement. This, defendant refused to do.

22. Defendant's attorney, Stanley Schlesinger, Esq., was throughout all the relevant times of the above negotiations duly authorized and acting in an agency capacity for defendant.

23. The knowledge of Stanley Schlesinger, Esq., is properly imputed to defendant, on whose behalf the attorney was acting.

## DISCUSSION

Plaintiff, East Girard Savings and Loan Association, has brought this action in equity against Norman Dinerman, a judgment creditor of Cross Realty Company, seeking to enjoin Dinerman from the transfer of said judgment, and requesting that said judgment be subordinated to the lien of plaintiff against Cross Realty Company and such other equitable relief as the court deems proper. Cross Realty Company is the owner of an apartment structure at 133 Byberry Road, Hatboro, Montgomery County, Pa., known as the Eleanor Court Apartments. Norman Dinerman is a judg-

ment creditor of Cross Realty Company, et al., filed on January 9, 1963, no. 63-235, in the Court of Common Pleas of Montgomery County, for the principal sum of $66,000.

In order to finance an addition to the apartment building costing $50,000, Cross Realty Company entered into negotiations with Frankford Trust Company for an increased loan. Frankford agreed to such a loan, but the mechanics involved Frankford satisfying plaintiff's mortgage of $235,000 and then securing a new mortgage of $285,000. To assure priority in this case as to the mortgage of $285,000, Frankford suggested that Cross Realty Company secure subordination agreements from the junior lienors of the first mortgage. Thomas R. Milligan, assistant title officer of Commonwealth Land Title Insurance Company, was retained by the Cross Realty Company to prepare the necessary agreements. Milligan prepared the agreements, one of which was forwarded to defendant for his execution. After the agreement sent to Dinerman was executed, Milligan learned that plaintiff was going to advance the additional $50,000 to Cross Realty and increase its mortgage to $285,000. Milligan called defendant's attorney and explained this change, and the latter agreed to this change by letter dated October 28, 1963.

"Dear Tom:

"It is agreeable with us that you use the agreement to postpone the lien of judgment executed by Norman Dinerman with the understanding that the first mortgage is to be increased to no more than $285,000.00.

"Very truly yours,
"Stanley Schlesinger"

The Cross Realty Company has subsequently run into financial difficulty, and defendant now argues that he never subordinated his lien to the increased mortgage of plaintiff.

It must be noted that prior to this transaction, the property was encumbered as follows, in order of priority:

$235,000 mortgage—East Girard Savings and Loan Association (plaintiff)

$39,000 mortgage—Aalbersberg (substantially reduced)

$66,000 judgment — Norman Dinerman (defendant)

Judgment — Solwen Corporation

Tax Lien — U. S. A.

Plaintiff contends that defendant knew that he was subordinating his lien to the increased interest of East Girard Savings and Loan Association. It is further asserted that the execution of the agreement, as it presently appears, was a mutual mistake due to inadvertence and that defendant has been unjustly enriched by reason of this mistake.

Defendant contends that he was unaware of any oral agreements between himself and plaintiff, and that he executed the final agreement upon the advice of his attorney. Dinerman indicated that the preliminary negotiations between the parties were handled on his behalf by his attorney, Stanley Schlesinger, Esq. This correspondence between Milligan and defendant's attorney demonstrates the mistaken impression of Milligan in preparing the agreement, and the understanding of the attorney that the first mortgage was to be increased to $285,000. It is significant that all other lienors of record on this premises, except the Federal tax lien which was satisfied, executed similar agreements to postpone their liens to the increased interest of plaintiff, the first mortgagee.

Although plaintiff has, in this case, asked this court to enjoin defendant from transferring his judgment lien and to subordinate defendant's lien to that of plaintiff, this court feels that by granting reformation of the executed agreement to read as allegedly under-

stood by both parties, the proper result would be obtained. Oral modification of a prior written agreement is a well established principle of contract law. This principle of contract law was set forth in the case of Pellegrene v. Luther, 403 Pa. 212 (1961), at 215-16:

"In Elliott-Lewis Corp. v. York-Shipley, Inc., 372 Pa., supra, the Court said (pages 349-350): 'The Parol Evidence Rule which prohibits the admission of oral evidence to vary or contradict a written contract does not apply to or prohibit a subsequent modification by parol; it applies only to prior or contemporaneous statements or agreements which induced the written agreement in question . . . *However, it is well settled that a written agreement may be modified by a subsequent (written or) oral agreement and that this modification may be shown by writings or by words or by conduct or by all three'* ". (Italics supplied.)

By reforming the written agreement of October 18, 1963, to include plaintiff in substitution for the name of Frankford Trust Company, plaintiff would be restored to his position of priority among the lienholders of Cross Realty Company. This reformation would certainly prevent unjust enrichment of defendant. In the case of Bugen v. New York Life Insurance Company, 408 Pa. 472 (1962), the court said, at page 475:

"A court of equity has the power to reform the written evidence of a contract and make it correspond to the understanding of the parties".

It has been further stated, in Kutsenkow v. Kutsenkow, 414 Pa. 610 (1964), at page 612:

"It has long been the law that courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident or mistake. Radnor Building and Loan Assn. v. Scott, 277 Pa. 56, 120 A. 804 (1923), and cases cited therein".

When reformation is sought because of a mistake,

the mistake alleged must be a mutual mistake: Bugen v. New York Life Insurance Company, supra; Kutsenkow v. Kutsenkow, supra. A mutual mistake has been defined in 8 P. L. Encyc., Contracts §74, as:

". . . one common to both or all parties, wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement".

There is definitely a mutual mistake in this case, and each party "labors under the same misconception respecting . . . the provisions of the written instrument designed to embody such agreement". Both parties, by their subsequent modification, believed that defendant's lien was subordinated to the $285,000 mortgage of the first mortgagee. The written agreement recorded on November 6, 1963, with the prothonotary of this court does not purport to subordinate Dinerman's lien to East Girard, but rather subordinates it to Frankford Trust Company. This court believes that the written agreement, as recorded, should be reformed to subordinate defendant's lien to plaintiff's interest.

Dinerman has argued that he had no knowledge that the circumstances surrounding the execution of the agreement and the facts concerning the parties in interest were other than those appearing on the face of the subordination agreement. The facts demonstrate that Schlesinger was the duly authorized agent of Dinerman, and acted in his interest and on his behalf throughout the negotiations. It has been said:

"[T]he relationship of the attorney to his client, . . . is largely governed by the law of Agency and is in general governed by the same rules which apply to other agencies": Mechem, Outlines of the Law of Agency (4th ed.) § 76. The relationship between defendant and his attorney clearly establishes the au-

thorization necessary to find an agency capacity. Further, defendant has apparently ratified all the arrangements made by Schlesinger. The placing of Schlesinger in the position of apparent authority renders his knowledge imputable to his principal: Corn Exchange National Bank and Trust Company v. Burkhart, 401 Pa. 535, 545 (1960).

This court feels that plaintiff's prayer for injunctive relief should be granted to prevent the transfer of defendant's judgment lien. Further, by reforming the agreement between the parties to read as modified, the original priority will be restored, and defendant's lien will be subordinated to the mortgage lien of plaintiff. The court also directs the prothonotary to record the reformed subordination agreement to reflect the lien priority as was intended by the parties, giving plaintiff position as first mortgagee.

### CONCLUSION OF LAW

1. The written subordination agreement executed by defendant, which referred to Frankford Trust Company, was subsequently modified by the parties to substitute East Girard Savings and Loan Association for Frankford Trust Company.

2. Although the written contract was subsequently modified after the date of execution, no written evidence of said modification is on record.

3. The parties were mutually mistaken as to the effect of using the written agreement without noting the subsequent modification.

4. Plaintiff is entitled to have the written agreement presently recorded with the prothonotary of this court reformed to make manifest the mutual understanding of the parties, as modified.

5. Defendant would be unjustly enriched if his priority position were permitted to remain.

6. The written subordination agreement should be

reformed by substituting the name East Girard Savings and Loan Association for that of the Frankford Trust Company.

7. Costs should be equally divided between plaintiff and defendant.

### DECREE NISI

And now, May 27, 1965, defendant is enjoined from transferring his judgment lien, and the written agreement of October 18, 1963, is reformed by substituting East Girard Savings and Loan Association for Frankford Trust Company. The costs are to be divided equally between plaintiff and defendant. The prothonotary is directed to make a notation of this reformation in the docket indicating that the agreement, as recorded November 6, 1963, has been reformed.

The prothonotary shall give prompt notice of this adjudication to the parties. Unless exceptions are filed within 20 days after such notice, the decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree.