## Kutztown Fair Association, Inc. *v.* Frey et ux., Appellants.

Argued March 18, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Edwin L. DeLong,* for appellants.

*C. Wilson Austin,* with him *Speicher & Austin,* for appellee.

OPINION BY ERVIN, J., June 11, 1957:

Plaintiff, Kutztown Fair Association, Inc., filed a complaint in equity against defendants, Henry W. Frey and Mildred N. Frey, his wife, praying for the reformation of a deed because of mutual mistake in the descrpition. From a decree of the lower court reforming the deed this appeal was taken.

The facts are as follows: in July of 1950, the Freys, appellants, were the owners of land on the east side of College Boulevard in the Borough of Kutztown, Pennsylvania, on which there was erected an apartment house building and a gasoline service station. The Farmers' Bank of Kutztown owned a tract of land with 4½ foot frontage on College Boulevard adjoining appellants' premises immediately to the north and the Kutztown Fair Association, Inc., appellee, owned a large tract of land on the east side of College Boulevard immediately adjoining the 4½ foot frontage of the Farmers' Bank to the north thereof. Sometime prior to July 14, 1950 Henry W. Frey, one of the appellants, spoke to one of the officers of the bank concerning the possibility of purchasing a rectangular tract with a frontage on College Boulevard of 34½ feet and a depth of 180 feet. On July 14, 1950 the appellee appointed Elmer Kline (deceased before time of trial), Howard Kutz and Claude Bordner as a committee to discuss the proposed transfer with the appellants. Three or four days after their appointment the three members of the committee met upon the ground itself and discussed the proposed transfer with one of the appellants, Henry W. Frey. The rectangular tract which appellants desired to purchase would have interfered with an existing road on the fair grounds and the committee suggested that Frey receive a total frontage of 46½ feet on College Boulevard and a rear width of 10½ feet. The proposed line

was measured with a steel tape and actually staked out upon the ground itself in the presence of Frey, who, after considerable discussion, agreed with the proposed plan. This was testified to by Bordner and Kutz, the two surviving members of the committee. On July 24, 1950 Frey gave to the Farmers' Bank of Kutztown his check to its order in the sum of $340.00. On the face of the check was written "Fair Ground Plot 34½ x 180." Mr. Fister, the officer of the bank, testified as to the following conversation with Frey: ". . . the only thing I know the committee told me that Mr. Frey would have to accept it the way the committee decided before the check would pass, and he said, 'Well, then, let it go through,' and handed me the check. I had handed it back and he gave it back again." Thereafter, before the fair, held in the third week of August, appellee erected along the diagonal boundary line, as staked out by its committee in the presence of Frey, a heavy wire fence. Frey was around when the fence was being erected and did not object. The fence remained in place until several weeks prior to the hearing on August 4, 1955, when Frey tore part of it down and erected another fence. On April 17, 1951 the committee made its report to appellee's board, stating therein that it agreed with Frey that in addition to the 34½ foot frontage he would have an additional 12 feet in front and "he would allow us 24 ft. in back thus protecting our road." The board, upon motion made and seconded, approved the action of the committee and approved the delivery of the deed to the Freys with the provision as stated by the committee. On April 18, 1951 a deed in fee simple was executed by the president and secretary of appellee to the Freys, conveying title to a tract of land along the east side of College Boulevard with a frontage of 34½ feet on College Boulevard and a depth of equal width

of 180 feet. The deed was prepared by James F. Marx, Esquire, from a description left with him at his office either by Elmer Kline, deceased at the time of trial, or one of the appellants, Henry W. Frey. In March 1952 appellee caused a survey of its land to be made and on June 25, 1952 Marx had a conversation with Frey calling his attention to the mistake in the description and Frey stated it would cost about a thousand dollars to correct the situation. Marx testified that he had no knowledge of the minutes of the association when he drafted the deed in April of 1951. On October 9, 1952 summons in equity covering the property involved in this dispute was issued. The principal question involved in this appeal is whether there was sufficient evidence of mutual mistake in the description of the deed to support the findings and decree of the chancellor, confirmed after exceptions by the court in banc.

The law is well settled that a court of equity has the right to reform a deed where a mutual mistake appears. *Radnor Bldg. & Loan Assn. v. Scott,* 277 Pa. 56, 120 A. 804; *Uniontown Savings & Loan Co. v. Alicia Land Co.,* 338 Pa. 227, 13 A. 2d 65; *Armstrong Co. B. & L. v. Guffey,* 132 Pa. Superior Ct. 19, 25, 200 A. 160.

Of course, the burden is on the plaintiff to produce clear and positive proof that a mistake existed, not only on the part of the plaintiff but also on the part of the defendants. A person who seeks to rectify a deed on the ground of mistake must establish in the clearest and most satisfactory manner that the alleged intention to which he desires it to be made conformable continued concurrently in the minds of all parties down to the time of its execution. *Miller v. Houseworth,* 387 Pa. 346, 350, 127 A. 2d 742. The testimony must be clear, precise and indubitable and of such

weight and directness as to carry conviction to the mind. *Bosler v. Sun Oil Co.*, 325 Pa. 411, 420, 421, 190 A. 718. We are satisfied that the testimony produced by the plaintiff was sufficient to meet these standards. Both parties went upon the ground in question and with a steel tape measured the disputed line and then placed markers to indicate its exact position. Thereafter, in the presence of appellant Frey, appellee erected a fence on the line agreed upon and maintained that fence until a short time before trial, when it was removed by appellant. When appellant delivered his check to the officer of the bank, it was made entirely clear to him by the officer that the check would not be accepted by appellee unless appellant agreed to the description as suggested by appellee's committee, and the appellant did so agree. The appellant has been using the additional road frontage. All of these facts make it abundantly clear to us that the lower court's action was completely justified under the evidence.

Appellants also argue that appellee's claim for reformation of its deed violates the statute of frauds and that the deed of conveyance is the final result of all prior parol negotiations between the parties. It is sufficient to say that equity may correct an inaccurate description in a deed where there is a mutual mistake. *Armstrong Co. B. & L. v. Guffey*, p. 25, supra. The right to such reformation may be enforced even though it necessarily be an invasion or limitation of the parol evidence rule. Restatement, Contracts, §509, also comment a.

Appellants also argue that the appellee was guilty of laches. Laches cannot be imputed to one in peaceable possession of land for delay in resorting to a court of equity to establish his right to the legal title. *Uniontown S. & L. Co. v. Alicia Land Co.*, p. 231, su-

pra. The appellee was in peaceable possession of the land in exact accordance with what it believed its deed to be and there had been no change in the situation existing between the parties at the time the appellee began its action in equity, which was approximately six months after the discovery of the mistake.

Decree affirmed.