Rusciolelli *v.* Smith et ux., Appellants.

Argued April 10, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Walter W. Riehl,* for appellants.

*Harry Ravick,* for appellees.

OPINION BY MONTGOMERY, J., June 15, 1961:

This is an appeal from a final decree in equity enjoining the defendants-appellants from interfering with the appellees' use of a walkway easement and compelling them to restore a set of steps they had removed.

On May 23, 1956 the appellants owned a lot with a dwelling house erected thereon in the Borough of Beth-

el, Allegheny County. This lot, hereinafter referred to as the Mollenauer lot, had its frontage on Railroad Street and the right of way of the Pittsburgh Railways Company. The rear of same abutted the rear of lot 5 in the Hultz Manor Plan. Didion Brothers, Inc., owned lot 5 and many other lots in said plan.

On May 23, 1956 appellants granted to Didion Brothers, Inc., its successors and assigns, an easement over their Mollenauer lot in the following language: ". . . free and uninterrupted use, liberty and privilege of ingress, egress and regress in and upon all that certain lot or piece of ground situate in the Borough of Bethel, County of Allegheny and State of Pennsylvania, a description of which is hereto attached, marked Exhibit 'A' and made part hereof, together with the free ingress, egress and regress to and from the said property of Didion Brothers, Inc., its successors and assigns, at all times, into, upon and out of said right of way or easement, it being further understood that the said right of way shall be used only for the purpose of installing and constructing a sanitary sewer in, through and over the said premises in accordance with the specifications of the Borough of Bethel and *for use as a walk way by pedestrians from Hultz Manor Plan of Lots to and from Pittsburgh Railways Company car stop.*"

During these negotiations between appellants and Didions, for the aforesaid easement, the appellants expressed a desire to purchase lot 5 aforesaid which had a new house thereon. These negotiations ripened into a sale and the lot and house were conveyed to them by Didions by a deed of the same date, May 23, 1956, which contained the following: "Subject also to an easement across the rear of the premises for sanitary sewers as may be required by the municipal authority of Bethel Boro and *also an easement along the dividing line between Lot No. 4 and property above described for a*

*walk way running from Prescott Drive to the rear of Lot No. 5.*" Lot 5 fronted on Prescott Drive.

Appellees (plaintiffs below) are all owners of lots in the Hultz Manor Plan under deeds, subsequent to the aforesaid deed to appellants, made directly to them by Didions, or through intervening owners who acquired title directly from Didions. None of said deeds made mention of either of the aforesaid easements. However, after this action was commenced, Didions executed a deed to appellees under date of August 31, 1959 which recited that ". . . by inadvertence, these easements were not specifically set forth in the aforesaid deeds," and undertook to correct this inadvertence by conveying to appellees, their heirs and assigns ". . . the right and privilege to use for a walk way, an easement along the dividing line between Lot No. 4 and Lot No. 5 in the Hultz Manor Plan . . . running from Prescott Drive to the rear of Lot No. 5 in said Plan." Rights in the easement over the Mollenauer lot were not included in this grant.

About three months after Didions acquired the aforesaid easements, they constructed a set of thirty-two wooden steps along the course of the walkway, partially on lot 5 and partially on the Mollenauer lot without permission of the appellants. Appellants subsequently removed same. Appellees, claiming the right to use the walkway and steps, filed this action to compel appellants to replace the steps and to desist from interfering with their use of same and the walk. In their amended complaint appellees allege that there was a mutual inadvertence, accident, and mistake made by appellants and Didions when the deed to lot 5 was prepared and that it did not express the true agreement of the parties which was to the effect that the reservation of the easement ". . . was to inure to the benefit of the said Didion Brothers, Inc., and to the owners, occupiers and users of all other properties of the said

Didion Brothers, Inc. in its Hultz Manor Plan of Lots, so that the said easements, together with the easements contained in the agreement between Didion Brothers, Inc., and the defendants executed at the same time and contemporaneously with the deed first above referred to between Didion Brothers, Inc. and the defendants . . . would afford access to the pedestrians from the Hultz Manor Plan of Lots from Prescott Drive to the Pittsburgh Railways Company carstop." Appellees then recited the new conveyance of the rights in the easement aforementioned.

Didion Brothers, Inc. are not parties to this proceeding either in seeking the injunction or the reformation of its deed to appellants. However, we think this is not fatal, if appellees are in effect successors, at least in part, to its rights in the easements, since no rights of innocent purchasers are involved. *Radnor Building & Loan Assn. v. Scott,* 277 Pa. 56, 120 A. 804; *Armstrong County Building and Loan Association of Ford City v. Guffey,* 132 Pa. Superior Ct. 19, 200 A. 160.

Courts of equity have jurisdiction to reform deeds where mutual mistake appears, *Kutztown Fair Association, Inc. v. Frey,* 183 Pa. Superior Ct. 516, 132 A. 2d 912; *Armstrong County Building and Loan Association of Ford City v. Guffey,* supra, or when a unilateral mistake occurs with the knowledge of the other party. *Peoples Natural Gas Company Appeal,* 399 Pa. 226, 160 A. 2d 391. However, to justify the reformation of a deed, the proof of mutual mistake must be clear and positive, *Miller v. Houseworth,* 387 Pa. 346, 127 A. 2d 742, and the one seeking reformation on the ground of mutual mistake must establish in the clearest and most satisfactory manner that the alleged intentions to which he desires that the deed be made to conform continued concurrently in the minds of the parties down to the time of the execution of the deed, *Kutz-*

*town Fair Association, Inc. v. Frey,* supra. If the evidence justifies such a finding, it may be made by the Chancellor even though it is expressly denied by one of the parties. *Armstrong County Building and Loan Association of Ford City v. Guffey,* supra. Such is the present case, wherein the appellants expressly deny that such an intention as contended by appellees ever existed in their minds.

Although the learned Chancellor made no specific finding that a mutual mistake had occurred in the preparation of the deed, in effect he did so by the statement in his adjudication that "the Chancellor feels that the defendants unquestionably subjected their land to servitude for the benefit of all the plaintiffs."

The evidence, in our opinion, is sufficient to support a finding that a mutual mistake or a unilateral one with knowledge of same by the appellants had been made in the preparation of the deed. Joseph Didion, of Didion Brothers, Inc., testified that the purpose of the negotiations was to procure an easement across the Mollenauer lot so that the owners of lots in the Hultz Manor Plan could have access to the car stop, and the agreement bears this out, for it is specifically made for the benefit of pedestrians from the Hultz Manor Plan for that purpose. At the time of these negotiations the easement aforesaid was sufficient to accomplish the purpose Didions had in mind since Didions controlled access to it from Prescott Drive via lot 5 owned by them; and appellants were aware of that purpose as expressed in the Mollenauer lot agreement. Although the sale of lot 5 to appellants was a subsequent development, they were certainly aware that for pedestrians from Hultz Manor Plan to enjoy the easement over the Mollenauer lot, they would also need the same privilege over lot 5.

But there is more in the record to indicate the true intentions of the parties in drafting the instrument.

Shortly after the deed was delivered (three months) Didions exercised their rights by constructing steps from the higher level on lot 5 to the lower level on the Mollenauer lot. Appellants, who were living in the house on lot 5 at that time, were not asked for their permission to do this. Didions had no personal use for these steps since they did not use the carline, nor did they own any other property in that direction. Further, all of plaintiffs used the two easements and steps constructed thereon until such time as appellants decided to remove the steps, which was almost two years later, in July of 1958. Intention, in the case of ambiguous instruments, is determined by the situation and conduct of the parties, surrounding circumstances, the object they had in view and the nature of the subject matter. *Foulke v. Miller*, 381 Pa. 587, 112 A. 2d 124. The same reasoning applies in the present case.

Further, Mrs. Smith (appellant) in her testimony stated: "They said that this walk way would be from Prescott Drive. I have already said that, which is a dead end street, to the rear of Lot 5, which is the beginning of the Mollenauer property."

It is also noted that the same consideration (reduction of the cost of lot 5 and the house thereon) covered both easements, and that the two transactions were closed at the same time.

Under all the evidence it appears clearly established that the intention of the parties was to make the reservation in the deed for lot 5, equally as comprehensive as the description of the easement over the Mollenauer property; and that by mutual mistake or a unilateral one by Didions in the preparation of the deed for lot 5, with knowledge thereof by appellants, the wording of the reservation clause was not properly stated as the parties intended it to be. Appellants' contention that they were unaware of the reservation in their deed until they received it in their hands in October, 1956 (pre-

sumably when it was returned to them after recording) does not merit consideration in view of the fact that they were present at the settlement when it was delivered, and had their attorney "scan over the papers".

The next issue to be resolved is whether plaintiffs acquired any rights in the easement over lot 5 accepting it as it was correctly intended. Since Didions are not parties to this action, plaintiffs must have enforceable rights to justify their bringing it. If this is an easement in gross, personal to Didions, it is generally held to be nonassignable: *Lindenmuth v. Safe Harbor Water Power Corporation,* 309 Pa. 58, 163 A. 159; unless it is made assignable by the instrument creating it. *Miller v. Lutheran Conference and Camp Association,* 331 Pa. 241, 200 A. 646. On the other hand an easement appurtenant is assignable and divisible as the dominant tenement may be divided and transferred and the owner of any part of the dominant tenement may claim the easement so far as it is applicable to his part of the property, provided the easement can be enjoyed as to the separate parcels without any additional burden upon the servient tenement. *Babcock Lumber Company v. Faust,* 156 Pa. Superior Ct. 19, 39 A. 2d 298.

An easement will never be presumed to be a mere personal right when it can fairly be construed to be appurtenant to some other estate. Whether an easement is in gross or appurtenant must be determined by the fair interpretation of the grant or reservation creating the easement, aided if necessary by the situation of the parties and the surrounding circumstances. *Lindenmuth v. Safe Harbar Water Power Corporation,* supra.

We have no trouble in finding that the easement in this case was appurtenant to the land owned by Didion Brothers, Inc. in the Hultz Manor Plan. Clearly it was intended to benefit Didions in the use of their

land, and not personally. They were developers of the Hultz Manor Plan, engaged in the construction of houses thereon, and thereby bringing new people into this area who would need convenient access to the street car line. They had no personal need for that convenience. It is noted that the grant by the use of the word, pedestrian, was made broad enough to cover not only the new home owners and their families, but visitors, tradesmen, etc., who might have occasion to call on them.

The case of *Nallin-Jennings Park Company v. Sterling*, 364 Pa. 611, 73 A. 2d 390, relied on by appellants, is distinguishable. There the grant was restricted both by a provision relating to the locking of a gate, and also by the enumeration of the parties to use same. In the present case the use of the word pedestrian is general, merely restricting the use of the easement to a footpath as against a way for vehicular traffic. Generally however, any lawful occupant of the dominant estate may use an easement. *Thos. Zell's Exers. v. Universalist Society*, 119 Pa. 390, 13 A. 447; *Gunson v. Healy*, 100 Pa. 42; *Paci v. Shipley*, 166 Pa. Superior Ct. 374, 71 A. 2d 844.

The easement being appurtenant was therefore assigned in part to plaintiffs by their original deeds under the Act of 1909, April 1, P. L. 91, section 2, as amended by the Act of 1925, April 30, P. L. 404, section 2 (21 P.S. 3), *Paci v. Shipley*, supra, without need for the deed from Didions executed and delivered to appellees subsequent to the entry of this action; and therefore they had enforceable rights at the time this action was started. We are not called on to and do not decide the rights of other lot owners in the Hultz Manor Plan who acquired title to their lots from Didions prior to the creation of the easement. All plaintiffs acquired their lots by deeds subsequent to that time.

This brings us to the final issue relating to the construction of the steps by Didions. Lot 5 was much higher in elevation than the Mollenauer lot. To enjoy the way covered by the combined easements, it was necessary to construct steps to overcome the variance and unite the two segments so they might be put to the intended use in traveling to and from the car stop. A right of way expressed in general terms includes any reasonable use to which it may be put. *Bowers v. Myers,* 237 Pa. 533, 85 A. 860; and an owner of an easement may make changes, not affecting the character of the servient estate in the manner of using the easement, so long as the use is confined to the purpose for which it was created. *Garan v. Bender,* 357 Pa. 487, 55 A. 2d 353. We have examined the record closely on this point and can find nothing indicating a burden to the servient tenement beyond what was intended. It is only reasonable to conclude that they intended some means to descend from the upper to the lower level. The case of *Hammond v. Hammond,* 258 Pa. 51, 101 A. 855, considered the erection of a bridge as a substitute for fording a stream in order to unite two segments of an easement. The facts of that case are very similar with those in the present case, and we think it rules the present case in its holding that the owner of the easement was within his rights in constructing the bridge, in the absence of any restriction to the contrary.

The decree of the lower court is affirmed.