## Mealy v. Clark

*William R. Mervine*, of *Mervine, Calderwood and Mervine*, for plaintiffs.
*H. Robert Hampson*, of *Hampson and Hampson*, for defendants.

WOLFE, *P.J.*, March 23, 1978—Plaintiffs seek to quiet title to an oil and gas lease on a tract of land being the east half of Lot 471 situate in Pleasant Township, containing 87-1/2 acres, more or less.

It is not denied plaintiffs are the owners of the oil and gas on and under the tract subject to an oil and

gas lease owned by defendants. However, plaintiffs claim by reason of the inactivity in the production of the tract defendants have abandoned their leasehold. Thus, by this action plaintiffs seek to terminate the seven-eighths working interest of defendants for the reason defendants have not complied with the terms of the lease as originally stipulated by the fee owner on February 23, 1906, when the leasehold was initially created and subsequently became vested by one-eighth royalty in plaintiffs and seven-eighths in defendants respectively.

The term of the grant is made unto the lessee "for the term of six months and so long thereafter as oil or gas is produced from the land leased and royalties and rentals paid by lessee therefor."

The only and narrow issue is if there has been a forfeiture of the lease by the terms thereof.

Plaintiffs acquired their one-eighth royalty by mineral deed on July 23, 1973, and it is not disputed the one-eighth royalty from the production yielded $5 for four-tenths of a barrel of oil paid in December, 1977. There were two payments made in 1973. However, no royalties have been realized for the years 1974, 1975 and 1976. Additionally, plaintiffs base their allegation of forfeiture on the ground defendants' predecessors in title or defendants have removed equipment from the premises, including rod lines and pumping jacks as well as any central power to operate the wells. Plaintiffs further contend defendants have stated the leasehold would not be produced as long as the one-eighth royalty was outstanding.

The acreage is a small part of a 3,000-acre tract which defendants own and operate as a unit. At the time of defendants' purchase of the leasehold on

October 12, 1973, it was in a state of disrepair, having old equipment on it, and the various wells were pumped by a central power. Defendants claim they did produce from the premises until the summer of 1975, when a severe storm caused damage to the equipment by fallen trees, which resulted in a substantial loss and an extended shutdown. Additionally, defendants claim the Department of Environmental Resources investigated the area and their entire leasehold in 1976 and as a result thereof set down strict requirements for the protection of the environment. Additional restrictions have been placed by the State Game and Fish Commission and the Fish and Wildlife Agencies of the Federal Government as the premises are located in a national forest as well as a state forest area. Defendants have one well in production on the premises operated by a single pump jack from a gasoline motor. It is not denied this well was out of production for a period of time in order to move the holding tank and gathering line from the low land in a stream area to a higher position to comply with the regulations, as well as to repair the tank so that no pollution would occur.

Defendants deny they made any statements of abandonment or nonproduction but interpret their communications with plaintiffs to mean that they would not drill any new wells but had no intention of stopping production. Defendants estimate there are from 5 to 10 old wells on the premises, but, however, do not know the state of their condition or productivity. Defendants have taken no steps to plug these wells or, on the other hand, to rehabilitate them.

The habendum clause mandates the lease is to remain in effect so long as oil or gas is produced *and*

royalties and rentals paid. This language obviously contemplates not only production but the payment of royalties. It is silent of any mandate the leasehold must be produced in paying quantities as is generally provided in later leases: Carlson v. Haut, 1 D. & C. 3d 428 (1975), and cases cited therein. We find no Pennsylvania cases interpreting the habendum in the instant lease as to longevity thereof. However, in Gillespie v. Ohio Oil Company, 260 Ill. 169, 102 N.E. 1043 (1913), the court held where the lease was for a term of five years and as long thereafter as oil or gas is produced, and the lessee completed a well two days before the end of the five-year period and produced some oil within the term and for several months thereafter, the lease had not expired by the expiration of the definite term. The court held: "Oil was produced continuously after the drilling of the well. It is true the quantity produced was so small as to make the venture unprofitable, but the strict letter of the lease was complied with and it has not expired by its own terms."

Although the lease in the instant case mandates no amount of production, nonetheless defendants are required to produce and pay a royalty. The difficulty in the interpretation of the longevity is the frequency in which the royalties must be paid or in what amounts.

In the absence of any terms in the instrument to the contrary the court must interpret the instrument in light of the intention of the parties. As stated in Rusciolelli v. Smith, 195 Pa. Superior Ct. 562, 171 A. 2d 802 (1961), when seeking the intention of the parties to an instrument which is ambiguous, their intention "is determined by the situation and conduct of the parties, surrounding cir-

cumstances, the object they had in view and the nature of the subject matter: Foulke v. Miller, 381 Pa. 587, 112 A. 2d 124."

Obviously a landowner does not rationally lease his land for the production of oil and be satisfied without any payment of royalty which, in our opinion, means to say if the property is nonproductive there will be no royalties and therefore the lease must be terminated so as to clear any cloud on the fee. This reasoning is found in Clark v. Wright, 311 Pa. 69, 167 Atl. 330 (1933), wherein the court resolving an issue similar to that before us found at 77-78:

"Surrender [of a lease] is a question of fact, to be determined by the acts and intentions of the parties. An unexplained cessation of operations under a lease the term of which depends on production, without remuneration to the lessor for an unreasonable length of time, gives rise to a fair presumption of abandonment or surrender, and, standing alone and admitted, would justify the court in declaring an abandonment or a surrender as a matter of law. See Aye v. Phila. Co., 193 Pa. 451.

"An oil and gas well from which no oil or gas is produced and marketed within a reasonable length of time is as no well at all to a lessor dependent upon such acts for his compensation. Under these circumstances, a conclusion of surrender is an equitable one. See Soaper v. King, 167 Ky. 121; Monarch Oil & Gas Company v. Hunt, 193 Ky. 315."

In the instant case the production has been meager and certainly standing by itself has not been in paying quantities. However, the terms of the lease do not require a paying quantity production. On the other hand, defendants have not indi-

cated they have any intention of abandoning the lease and on the contrary have taken concrete steps to make it productive. Referring to the language in Clark v. Wright there is an explained cessation of operation under the lease, to wit, repair of the holding tank and movement thereof to comply with the requirements of the various municipal agencies which defendants now find they must fulfill. The lease does not require any number of wells to be drilled. There is no evidence defendants have pulled or plugged any of the wells. Some equipment has been removed by reason of the storm and the leasehold is not being operated by the central power which was used historically to produce wells. We do not lose sight of the fact, however, that the lessor expects compensation in the nature of a royalty and therefore this requires defendants to produce the premises with due diligence, taking into account all of the circumstances to do so, which include the cost of drilling, in relation to the expected amount of return.

There is no evidence defendants have abandoned the lease or intend to do so. The weight of the evidence concludes defendants have been working the lease and have experienced delays in doing so beyond their control. For us to declare a forfeiture would be unwarranted and against the weight of the evidence. This is not a situation where the lessees have not produced the well over a substantial period of time or attempted to produce it albeit the production is at present not satisfactory due to apparent high water content in ratio to the oil produced. There is no evidence that the leasehold cannot be produced profitably to make a reasonable return to the royalty holder as well as the working interest holder.

For these reasons we enter the following

## ORDER

And now, March 23, 1978, plaintiffs' prayer for relief to declare the leasehold abandoned and work a forfeiture is denied.