NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2431
_____

POCONO REALTY COMPANY;
EDWIN KRAWITZ;
BARBARA KRAWITZ,

Appellants

v.

LAMAR ADVERTISING COMPANY,
A Corporation, Successor to Martin Media,
A California Limited Partnership
_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 3-08-cv-00165)
District Judge:  Honorable Thomas I. Vanaskie
_____

Submitted Under Third Circuit LAR 34.1(a)
September 24, 2010
_____

Before:  MCKEE, Chief Judge, AMBRO and CHAGARES, Circuit Judges

(Opinion filed: September 29, 2010)
_____

OPINION
_____

AMBRO, Circuit Judge

This case involves the scope of express easements. Defendant Lamar Advertising Company ("Lamar") operates and maintains billboards on the land of Plaintiffs Edwin and Barbara Krawitz, or Pocono Realty Company.[1] Lamar holds express easements in connection with the billboards. Plaintiffs claim that the use of the land on which the billboards sit exceeds the scope of the easements. They filed this action in ejectment and seek to recover rental income and mesne profits.[2]

The District Court granted summary judgment for Lamar and Plaintiffs appeal. We affirm for substantially the reasons given by the District Court.

## I.

### Background and Procedural History

In 1998 Plaintiffs sold certain assets and easements to Lamar's predecessor in interest, Martin Media. The Purchase and Sale of Assets Agreement (the "Agreement") included the following relevant provisions:

> 1. Purchase and Sale of Assets and Easements. Seller agrees to sell, transfer, assign and deliver to Buyer and Buyer agrees to purchase from Seller all of Seller's right, title and interest in and to the Assets, pursuant to the terms and conditions contained in this Agreement.
>
> 1.1 In addition to the Assets, Buyer shall purchase from Seller and Seller shall sell to Buyer permanent easements for the placement, operation and maintenance of specified outdoor advertising structures on the real property of Seller (the "Boards"), all as more fully described in the easements attached to this Agreement as Exhibit "B" (the "Easements"). The Easements shall include unrestricted access rights to each of the Boards for

---

[1] Mr. Krawitz owns Pocono Realty. Two of the billboards are situated on land owned by Mr. and Mrs. Krawitz and one is located on land owned by Pocono Realty. App. at 23. Unless otherwise stated, they are jointly and severally referred to as "Plaintiffs."

[2] Mesne profits are "[t]he profits of an estate received by a tenant in wrongful possession between two dates." *Black's Law Dictionary* 1329 (Bryan A. Garner ed., 9th ed. 2009).

construction, maintenance, operation and utilities, and the real property upon which the Boards are now located shall be subject in perpetuity to such Easements.

App. at 15. The standard Easement terms included the following provisions, among others:

> WHEREAS, Grantor is the owner in fee simple of a certain tract of land situate in the Borough of East Stroudsburg, Monroe County, Pennsylvania, as more particularly described on Exhibit "A" attached hereto and made a part hereof (hereinafter "Grantor's Property");
>
> WHEREAS, Grantee is or is about to become the owner of a certain billboard structure situate on Grantor's Property ("Billboard") and requires a perpetual right of way for use, access and maintenance of the Billboard; and
>
> WHEREAS, Grantor has agreed to grant to the Grantee an easement for such use, access and maintenance, upon the terms and conditions set forth therein.
>
> NOW, THEREFORE . . . .
>
> 1. The Grantor does hereby give and grant to the Grantee, its successors and assigns, a perpetual easement in gross in common with Grantor ("Easement") over a portion of Grantor's Property more particularly shown on Exhibit "B".
>
> 2. Grantee may use the Easement for the installation, servicing and maintenance of a 10X30 foot double faced illuminated Billboard. Grantee shall have the right to change the size, design and structure of the Billboard, as determined in Grantee's sole discretion. Grantor may use the Easement for its reasonable purposes, provided Grantor's use does not interfere or compete with Grantee's use . . . .
>
> 3. The Easement shall include ancillary rights of ingress and egress over the balance of Grantor's Property for the purpose of installation, servicing and maintenance of the Billboard located on the Easement . . . .
>
> 4. The Easement shall include the right to install, service and maintain electrical service lines under and over the Grantor's Property for the purpose of supplying electricity to the Billboard located on the Easement.

3

> 5. Grantor covenants and agrees that no development, trees, structures, signs, fences or other items located on Grantor's Property shall block or obscure the view of the billboard located on the Easement from traffic traveling in either direction along Interstate Route 80 . . . .

App. at 27-28.

The "Krawitz Sign Inventory" was included as an attachment referenced in an Exhibit to the Agreement. Of six locations shown on the Inventory, the three locations at issue here are 3, 4, and 6. With respect to the placement of the remaining three billboards (1, 2, and 5), Plaintiffs had apparently entered into leases with two other property owners. *See Pocono Realty Co. v. Lamar Adver. Co.*, No. 3:CV-08-0165, 2009 WL 1109837, at *2 n.3 (M.D. Pa. Apr. 23, 2009). Rental amounts were listed for locations 1, 2, and 5; but the annual lease amount for locations 3, 4, and 6 was listed as "0." App. at 23.

Mr. Krawitz wrote Lamar in November 2007 asserting a right to collect rent for the use of the property on which the latter three billboards sit. Lamar denied any obligation to pay rent, stating that the use of the land was within the scope of its easements.

In December 2007, Plaintiffs filed a complaint in the Court of Common Pleas in Monroe County. As noted above, they sought ejectment, recovery of rents, and mesne profits. Lamar removed the case to the District Court on the basis of the parties' citizenship diversity. Lamar then counterclaimed for attorneys' fees and costs. Both parties moved for summary judgment.

4

In April 2009, the District Court granted summary judgment for Lamar and awarded it fees and costs. The Court found that the plain and unambiguous terms of the Agreement granted Lamar the right to use the Plaintiffs' land to display and support the billboards. Plaintiffs appealed.

## II.

### Jurisdiction and Standard of Review

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over the District Court's final order under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). In reviewing a District Court's order for summary judgment, we apply the same standard used by that Court. *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007). Summary judgment is appropriate when "there is no genuine issue as to any material fact [such] that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). As a federal court sitting in diversity, we apply the substantive law of the forum state— Pennsylvania. *Kleinknecht v. Gettysburg Coll.*, 989 F.2d 1360, 1365 (3d Cir. 1993).

## III.

### Discussion

The crux of the parties' disagreement is the type of interest granted to Lamar. It contends that the easement included the right to place its billboards on the Plaintiffs' property. Plaintiffs, by contrast, argue that the easements include only the right of passage to the billboard. In their view, Lamar acquired a *de facto* leasehold interest,

5

notwithstanding the fact that no rent was previously required or reserved in a lease. They assert that Lamar became a tenant at will by virtue of its possession of the land, and is now a tenant at sufferance by virtue of its failure to comply with Plaintiffs' demand for rent.

**A. The Plain Meaning of the Parties' Agreement**

This dispute is governed by principles of contract interpretation. *See Bito Bucks in Potter, Inc. v. Nat'l Fuel Gas Supply Corp.*, 449 A.2d 652, 654 (Pa. Super. Ct. 1982) ("It is settled that the same rules of construction apply to deeds granting easements as to contracts generally."). With respect to easements, "[i]n the case of an express grant or reservation, the extent of the right depends upon the terms of the instrument conveying the interest, as interpreted by applying general principles of contract law." *Hann v. Saylor*, 562 A.2d 891, 893 (Pa. Super. Ct. 1989). In particular, in determining the scope of an easement, courts should look to the parties' intent, as demonstrated by the language of the grant. *Sigal v. Mfg. Light & Heat Co.*, 299 A.2d 646, 649 (Pa. 1973).

Accordingly, if the language of the Agreement is unambiguous, our analysis needs to proceed no farther. *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429-30 (Pa. 2001) ("When a writing is clear and unequivocal, its meaning must be determined by its contents alone . . . . In the absence of an ambiguity, the plain meaning of the agreement will be enforced." (internal citations omitted)). As explained in *Commonwealth Department of Transportation v. L.C. Anderson & Sons, Inc.*,

> [t]he question of whether an ambiguity exists is to be determined by the Court as a question of law. A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of

6

being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning.

452 A.2d 105, 106 (Pa. Commw. Ct. 1982).

On their face, the Agreement and the Easement terms are unambiguous. We therefore agree with the District Court that they are subject only to one reasonable interpretation. *Pocono Realty*, 2009 WL 1109837, at *1.

Section 1.1 of the Agreement belies Plaintiffs' attempt to separate the right to access the boards from the right to use the land under the boards. That provision explicitly provides that "the real property upon which the Boards are now located shall be subject in perpetuity to such Easements." Moreover, the Easement terms make reference to the "Billboard located *on* the Easement." *See* App. at 28 (emphasis added). They also refer to the rights of ingress and egress, for the purposes of maintaining the billboards, as "ancillary" rights. App. at 28. If the parties did not intend for the land under the billboards to be included under the easement agreement, to what else could these rights be ancillary?

Plaintiffs incorrectly state that Lamar's easements are limited to rights of passage over the land. Here, Plaintiffs granted Lamar easements in gross, as compared to easements appurtenant. Easements in gross are personal to the grantee; they do not run with the land, as do easements appurtenant. Easements in gross thus confer certain benefits on the grantee, including the right to use the land for a particular purpose. *See Ariel Land Owners, Inc. v. Dring*, No. Civ.A. 3:01-CV-0294, 2005 WL 2416123, at *5 (M.D. Pa. Sept. 30, 2005). As the District Court pointed out, the plain, dictionary

7

meaning of "use" is "a long-continued possession and employment of a thing for the purpose for which it is adapted." *Pocono Realty*, 2009 WL 1109837, at *6 (quoting *Black's Law Dictionary* 1577 (8th ed. 2004)) (quotation marks omitted).

We thus agree with the Court that "it is evident that the parties contemplated that the Easements were for the particular purpose of displaying billboards—meaning, placing the billboard structures on the property in question in order to advertise." *Id.*[3]

## B. The Parties' Conduct

The parties' conduct further confirms this conclusion. It has been nearly ten years since the Agreement was executed. Plaintiffs have never before demanded rent from Lamar. Plaintiffs' claim that their complacence is irrelevant, as it does not alter their status as landowners and their attendant rights to collect rent for the occupancy of their land. We need not address Plaintiffs' estoppel arguments in this regard. Their behavior between January 1998 and November 2007 "is certainly a convincing demonstration of [their] interpretation of the contract. It is, of course, hornbook law that what the parties do under a contract is highly important in determining the meaning of the agreement

---

[3] In rejecting Plaintiffs' effort to recast their legal relationship with Lamar as that of landlord-tenant, we similarly reject their argument that the "open term of possession" is a perpetuity disfavored in the law. Under Pennsylvania law, "[a]n express easement is presumptively perpetual in duration, and will be rendered void only if circumstances change to such a degree as to render the easement useless to the grantee." *Kapp v. Norfolk S. Ry Co.*, 350 F. Supp. 2d 597, 608 (M.D. Pa. 2004) (citing *Woodlawn Trs., Inc. v. Michel*, 211 A.2d 454, 456 (Pa. 1965)). Also, easements in gross may be assignable if the granting instrument makes them so. *See Rusciolelli v. Smith*, 171 A.2d 802, 806 (Pa. 1961). The instrument in our case states: "[t]he Grantor does hereby give and grant to the Grantee, its *successors and assigns*, a perpetual easement in gross . . . ." (emphasis added).

8

which they have made." *Am. Cyanamid Co. v. Ellis-Foster Co.*, 298 F.2d 244, 246 (3d Cir. 1962).[4]

## Conclusion

The District Court found that the plain language of the Agreement "would suggest that the bundle of interests acquired by [Lamar] included the right to placement of its structures on the properties that are the subject of the easements." *Pocono Realty*, 2009 WL 1109837, at *6. We fail to see how Lamar's use of the area occupied by the billboards has exceeded the scope of its easements. *Cf. Baseball Pub. Co. v. Bruton*, 18 N.E.2d 362, 363 (Mass. 1938) (finding the right to maintain an advertising sign on a wall owned by the defendant was an easement in gross). Thus, considering the plain meaning of the Agreement, in conjunction with the parties' conduct, we reach the same conclusion as the District Court.

In light of our conclusions, Lamar is also entitled to attorneys' fees and costs pursuant to section 14.1 of the Agreement, which awards fees and costs to the prevailing party in any action brought for the enforcement of the agreement. Thus, we affirm the District Court's order.

---

[4] Plaintiffs urge us to consider that rents are collected for the land on which billboards at locations 1, 2, and 5 are situated. The owners of those properties collect these rents from Lamar pursuant to leases that were assigned to Lamar's predecessor in the initial transaction. We decline to conclude that these other arrangements—whatever they might suggest—outweigh the Agreement's plain language and the unequivocal nature of the parties' conduct between January 1998 and November 2007 as to the easements for locations 3, 4, and 6.