J-S03002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY J. MAILLIARD AND SABRINA L. MAILLIARD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDGEWOOD DEVELOPMENT, LLC | : | |
| | : | No. 833 WDA 2021 |
| Appellant | : | |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Crawford County Civil Division at No(s):
No. AD 2016-722

BEFORE:   LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: MAY 26, 2022**

Edgewood Development, LLC (Edgewood) appeals from the order, entered in the Court of Common Pleas of Crawford County, granting summary judgment in favor of Appellees, Timothy J. Mailliard and Sabrina L. Mailliard (the Mailliards).  The court's order corrects the description of a 16-acre parcel of real estate conveyed to Edgewood via a sheriff's deed and quitclaim deed and directs the Mailliards to reimburse Edgewood for any taxes it may have paid on the land, less any amounts received or to be received by Edgewood for the sale of any timber harvested from the real estate.  After careful review, we reverse and remand.

---

[*] Retired Senior Judge assigned to the Superior Court.

On September 1, 2011, the Mailliards entered into a land installment contract (Contract) in which they agreed to sell Carl Sterling (Sterling) "16 Acres along State Highway Route 198 between Blooming Valley and Guys Mills, PA" (the Property/Parcel 1) for $35,000.00.  Contract for Deed, 9/1/11, at 1.  The Contract was not publicly recorded.  In December 2012, the Mailliards instituted a foreclosure action against Sterling when he defaulted on the Contract.  The lawsuit alleged that the Mailliards "entered into a 'Contract for Deed' dated September 1, 2011, by which [Sterling] agreed to purchase the below described real estate for $35,000.00."  Foreclosure Complaint, 12/7/12, at ¶ 3.  The complaint describes the land purchased under the Contract as follows:

> 5.  The property commonly known as 13251 State Highway 198, Guys Mills, Pennsylvania[,] 16327 (Crawford County tax index number 4001-023) is described as follows:
>
> > **All that certain piece or parcel of land** situate in the Township of Randolph, County of Crawford, and Commonwealth of Pennsylvania, bounded and described as follows, to wit:  Beginning in Randolph Township, on the north by the public road leading from Blooming Valley to Guys Mills; on the east by a public road leading south to Guys Mills; on the south by lands now or formerly of Kelly and Kendall; and on the west by land now or formerly of Kightlinger, **containing thirty-three (33) acres of land**, more or less, and being the same land conveyed to Ben N. Kelly by Deed of Lloyd H. Mullen, et ux,, dated April 4, 1957, and recorded in the Recorder's Office of Crawford County, Pennsylvania in Deed Book 355, page 163.
> >
> > Excepting and reserving therefrom three parcels of land conveyed as follows, first, by Deed of Lloyd H. Mullen, et ux., dated July 14, 1045, recorded in the Recorder's Office of Crawford County, Pennsylvania[,] in Deed book 374, page

40; and third, by Deed of Ben N. Kelly to William Grosser, et ux., dated September 8, 1955[,] and recorded in the Recorder's Office of Crawford County, Pennsylvania[,] in Deed book 377, page 131.

**Including also**, **that certain piece or parcel** bounded and described as follows, beginning on the north by land formerly of J. Seymour Johnson; on the east by a public road; on the south by land formerly of Negley; and on the west by land formerly of Negley, **containing Sixty (60) acres of land**, more or less, and being the same land conveyed to Ben N. Kelly by Deed of Emma H. Grundy, widow, and Clarence G. Grundy, a single man, dated December 21, 1945, and recorded in the Recorder's Office of Crawford County, Pennsylvania[,] in Deed book 385, page 45, conveyed to Frank T. Lamb and Audrey F. Lamb.

**Excepting and Reserving from both parcels** that certain parcel approximately two acres conveyed . . . by Deed dated October 28, 1983[,] and recorded[.]

Further excepting and reserving unto the Grantor herein, her heirs and assigns, all timber standing and fallen, measured fourteen inches and more in diameter one foot from the ground for the term of one year from date hereof.

Action in Mortgage Foreclosure, 12/7/12, at ¶ 5 (emphasis added).

Ultimately, the Mailliards obtained an *in rem* judgment against Sterling in the foreclosure action; a writ of execution was issued to the sheriff on the judgment. However, because Sterling subsequently filed for bankruptcy, the foreclosure proceedings were stayed. On June 3, 2016, Edgewood[1] successfully bid upon and purchased the real estate at a second sheriff's sale.

_____

[1] Edgewood was formed on November 2, 2015, by John W. Gizzie, the company's manager. **See** Deposition of John W. Gizzie, 4/8/19, at 8-9. The company was formed to invest in real estate, *id.* at 9, and, at the time of the current matter, Edgewood had invested in three properties. **Id.** at 9-10.

The deed was recorded on June 21, 2016. However, an error in the metes and bounds description of the real estate incorrectly listed both the Property and a 54-acre parcel of land (Parcel 2) owned by the Mailliards as the land being conveyed in the sheriff's deed.[2] The two different parcels were also identified in the deed with two tax index numbers. **See** Sheriff's Deed, 6/21/16, at [2] ("The above[-]described premises are commonly referred to by Crawford County Tax Index Numbers 4001-023-70001 and 4001-041-7001.").

After the sheriff's sale, Edgewood approached the Mailliards' attorney and requested the Mailliards execute a quitclaim deed in order to: (1) confirm that the sheriff's sale also released all of the Mailliards' interest in and to the real estate; and (2) clarify the recorder of deeds' indexing of the Mailliards' names because they had an interest in the property that was conveyed via the sheriff's deed. **See** Deposition of John W. Gizzie, 4/8/19, at 34. The quitclaim deed was recorded on July 5, 2016. Again, the same incorrect description of both parcels of land was included in the quitclaim deed exchanged between the Mailliards and Edgewood for consideration ($1). **See** Quitclaim Deed, 7/5/16, at 2 ("The above[-]described premises are commonly referred to by Crawford County Tax Index Numbers 4001-023-70001 and 4001-041-70001."). The quitclaim deed also included language that "[t]his deed is being given to supplement a sheriff's deed dated June 21, 2016[,] and

_____

[2] It is undisputed that Sterling had no interest in the 54-acre parcel.

- 4 -

recorded on June 21, 2016[,] at Crawford Country Instrument Number 201600004395 to convey any remaining interest in the property as the sheriff[']s sale was **on an interest in a land contract**." *Id.* at [2] (emphasis added).

No exceptions to the sheriff's sale or petition to set aside the sheriff's sale were timely filed. When the Mailliards were unsuccessful in resolving the mistake in the deeds' land descriptions, they filed the instant lawsuit against Edgewood on November 3, 2016, seeking reformation of the deeds by "remov[ing] the references to the 54-acre parcel and to convey only the interest in the 16-acre parcel." Mailliards' Complaint, 11/3/16, at [5]. Edgewood filed preliminary objections to the complaint alleging that, in order to require Edgewood to convey Parcel 2 back to the Mailliards, the Mailliards should have filed a petition to set aside the sheriff's sale *prior* to the delivery of the deed to Edgewood. **See** Pa.R.C.P. 3132.[3]

---

[3] Pursuant to Rule 3132:

> Upon petition of any party in interest **before delivery of the personal property or of the sheriff's deed to real property**, the court may, upon proper cause shown, set aside the sale and order a resale or enter any other order which may be just and proper under the circumstances.

Pa.R.C.P. 3132 (emphasis added).

- 5 -

On December 28, 2016, the Mailliards filed a petition to set aside the sheriff's sale.[4]  Edgewood filed preliminary objections to the petition to set aside the sheriff's sale.  In an amended complaint, filed on February 14, 2017, the Mailliards included counts for unjust enrichment (Count I), rescission (Count II), fraud (Count III), and reformation (Count IV).  The Mailliards asserted that the sheriff's sale could only contractually convey interest in the Property/Parcel 1 (16-acre parcel) that was identified by a specific Crawford County tax index number and that the sheriff did not have the jurisdiction to convey any interest in the 54-acre parcel—a conveyance that was beyond the interest in the contract that was foreclosed upon.  The Mailliards attached the deposition of John W. Gizzie, Edgewood's designated corporate representative and manager who bid on and purchased the Mailliards' land at the sheriff's sale, as an exhibit to their complaint.  Edgewood filed an answer and new matter to the Mailliards' first amended complaint.  On May 2, 2017, the Mailliards filed an answer to Edgewood's new matter.

For almost two years the case remained inactive.  As a result of the docket inactivity, on March 1, 2021, the court filed a notice of its proposed termination of the matter.  *See* Pa.R.J.A. 1901.  On March 5, 2021, the Mailliards filed a statement of their intention to proceed with the case.  On April 8, 2021, the Mailliards filed a summary judgment motion averring that

_____

[4] Instantly, the trial court specifically indicated that it was **not** setting aside the sheriff's sale.  *See* Trial Court Memorandum, 6/17/21, at 4 n.4.

"there is no dispute of material fact that [Edgewood], by its manager, **had actual knowledge that** only the interests of [] Sterling and **only 16 acres** in which Sterling had an interest as addressed in the [] Contract [that] **was foreclosed [upon] have been exposed for sale by Sheriff's [Sale] and the only property [Edgewood] could claim by Sheriff's Sale Deed by** law **where he admits he actually read the 'contract for Deed**.'" Plaintiffs' Summary Judgment Motion, 4/8/21, at ¶ 8 (emphasis in original). On June 17, 2021, the trial court issued a memorandum and accompanying order granting the Mailliards' summary judgment motion.

Edgewood filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Edgewood presents the following issues for our consideration:

(1) Whether the trial court erred in finding that [the] sheriff's deed conveyed only one parcel instead of two[.]

(2) Whether the trial court erred in finding that Edgewood [] was unjustly enriched when the quitclaim deed conveyed two parcels[.]

(3) Whether the trial court erred in ordering reformation of both the sheriff's deed and the quitclaim deed[.]

(4) Whether the trial court erred in determining that there are not genuine issues of material facts forming an element of the causes of action or defenses[.]

Appellant's Brief, at 4-5.

When reviewing a trial court's grant of summary judgment, our standard and scope of review are as follows:

> [A]n appellate court's scope of review is plenary, and the standard of review is the same as that applied by the trial court. An appellate court may reverse the entry of [] summary judgment only where it finds that the [trial] court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, an appellate court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As the inquiry involves solely questions of law, an appellate court's review is *de novo*.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa. Super. 2015) (en banc) (additional citations omitted)

Instantly, the trial court based its decision on two equitable principles, specifically the doctrines of unjust enrichment and reformation.[5]

> Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred. The elements necessary to prove unjust enrichment are:
>
>> (1) benefits conferred on defendant by plaintiff; (2) **appreciation of such benefits by defendant**; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

*Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. 1999) (emphasis added) (citations and internal quotation marks omitted).

---

[5] The trial court, however, made no findings with regard to fraud and recission.

Here, the trial court concluded that, because Edgewood "paid only nominal consideration for the [q]uit[c]laim [d]eed," it "would be unjustly enriched if that deed conveyed title to both Parcels 1 and 2, because the [s]heriff's [d]eed conveyed title to only Parcel 1[.]" Trial Court Memorandum, 6/17/21, at 5. However, as Edgewood points out, just because it may have received title to two parcels at a price below market value, when the Mailliards claim they only intended to convey one piece of land, it does not automatically make any perceived enrichment unjust.[6] There was no evidence to show that Edgewood realized a benefit where the foreclosure complaint described two parcels of land had been conveyed to Sterling, the sheriff's deed described the subject real estate as two separate parcels, the Mailliards accepted Edgewood's bid, and the Mailliards agreed to provide, and did provide, execute, and deliver a quitclaim deed to Edgewood describing and including both parcels.

With regard to reformation, Pennsylvania courts have long held "that courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident[,] or mistake." *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (quoting *Kutsenkow v. Kutsenkow*, 202 A.2d 68, 68-69 (Pa. 1964)). Traditionally, when a party sought reformation based upon mistake, the mistake alleged must have been a

---

[6] In fact, it is common that third-party bids at sheriff's sales are not based on fair market value, and that successful bidders often acquire property at below market value.

mutual mistake.[7] ***Regions Mortg., Inc. v. Muthler***, 889 A.2d 39, 41 (Pa. 2005). However, "later decisions allowed unilateral mistakes to also serve as the basis for reformation," ***id.***, where "the party against whom reformation is sought had such knowledge of the mistake as to justify an inference of fraud or bad faith." ***Dudash v. Dudash***, 460 A.2d 323, 327 (Pa. Super. 1983). Finally, it is well-settled that while a court has the authority to reform a deed on the ground of unilateral mistake, "[i]t is necessary that the mistake as well as the actual intent of the parties be clearly shown." ***Hassler v. Mummert***, 364 A.2d 402, 403 (Pa. Super. 1976), citing ***Rusciolelli v. Smith***, 171 A.2d 802 (Pa. Super. 1961).

Here, it is undisputed that the mistake—incorrectly listing Parcel 2 in the sheriff's and quitclaim deeds—was one-sided and, admittedly, made by the Mailliards. Therefore, in order for the court to reform the deeds, the Mailliards had to show that Edgewood had "such knowledge of the mistake as to justify an inference of fraud of bad faith." ***Dudash***, ***supra*** at 327.

Instantly, the trial court and the Mailliards rely upon testimony in Gizzie's deposition to conclude that Edgewood "had reason to know that only Parcel 1 was being offered for sale, because [Gizzie] performed due diligence by examining the foreclosure and execution files, and [by] reading the

---

[7] "[M]istakes are the exception rather than the rule[,] ***Step Plan Services, Inc. v. Koresko***, 12 A.3d 401, 410 (Pa. Super. 2010), and [] without [clear and convincing] proof, reformation must fail." ***Muthler***, 844 A.2d at 582.

Contract for Deed."[8]  Trial Court Memorandum, 6/17/21, at 4, citing Deposition of John W. Gizzie, 4/8/19, at 14, 27 ("I went in and looked at the Writ of Execution), Appellants' Brief, at 20 ("The actual knowledge admitted to by [Gizzie] **makes it probable** that he knew there was property in which [] Sterling did not have an interest included in the [deed's] description.") (emphasis added).  Based on that conclusion, the court found, as a matter of law, that "[t]he Sheriff's Deed[,] thus[,] conveyed title only to Parcel 1, regardless of the description therein provided."  Trial Court Memorandum, 6/17/21, at 4.  A closer look at the record and relevant law, however, compels a different result.

In his deposition, Gizzie stated that he performed his own title search prior to the sheriff's sale, which included looking at legal advertisements in the Crawford County Legal Journal, the Meadville Tribune, the sheriff's handbills, the docket, the actual pleadings in the Mailliard-Sterling foreclosure action, tax records, a county geographic information system (GIS), and a writ of execution.  Deposition of John W. Gizzie, 4/8/19, at 14, 27, 40.  At the sheriff's sale, Gizzie bid $40,000.00, plus costs and transfer taxes, for the land.  *Id.* at 31.  Subsequent to the sheriff's sale, Gizzie approached the Mailliards' attorney and requested the Mailliards execute a quitclaim deed in

---

[8] ***See also*** Trial Court Opinion, 6/17/21, at 5 ("Reformation is an available remedy when the deed fails to conform to the parties' intentions [and, i]n setting forth the description of both Parcels 1 and 2, the [q]uit[c]laim [d]eed[,] thus[,] did not conform to the parties' stated intentions.").

order to confirm that the sheriff's sale also released all of their interest in and to the conveyed real estate. The Mailliards' attorney included not just the Property (16-acres), but also the additional 54-acre parcel, Parcel 2, that the Mailliards owned, but in which Sterling never had an interest—just as Plaintiffs' attorney had done in the sheriff's deed.

Just because Gizzie testified he reviewed the foreclosure complaint (which attached the Contract) and the writ of execution does not mean that Gizzie knew that the Mailliards had mistakenly included a second parcel in the deeds, and, critically, that it can be inferred that he acted fraudulently or in bad faith by bidding on both parcels. **Hassler**, **supra**; **Rusciolelli**, **supra**. As Edgewood correctly notes, this was not a typical foreclosure action on a recorded mortgage where a bank is the foreclosing party. Rather, the adjacent parcels referenced in the deeds were both owned by the Mailliards, and, thus, they had the legal authority to convey them via deed. Moreover, the original foreclosure complaint filed by the Mailliards against Sterling also incorrectly described the subject land as two separate parcels—a 33-acre parcel and a 60-acre parcel. **See** Action in Mortgage Foreclosure, 12/7/12, at ¶ 5. In fact, Gizzie testified that "[t]he [c]omplaint described the 70 acres." Deposition of John W. Gizzie, 4/8/19, at 41. This fact makes the Mailliards' mistake even less apparent to a third-party like Edgewood.

Procedurally, the trial court was required to review the record in the light most favorable to the non-moving party, Edgewood. **Reinoso**, **supra**. After a thorough review of the record, it is apparent that disputed questions

of fact exist regarding whether Edgewood had actual knowledge that the Mailliards only intended to sell their interest in Parcel 1 and whether it was proper to infer that it acted fraudulently or in bad faith—especially where the court clearly did not make any finding with regard to fraud. Thus, we conclude that the trial court committed an error of law by reforming the deeds based on the doctrine of unjust enrichment and granting summary judgment in the Mailliards' favor. **See Swords v. Harleysville Ins. Co.**, 883 A.2d 562, 566-67 (Pa. 2005) (trial court may grant summary judgment only when right to such judgment is clear and free from doubt).

Order reversed. Case remanded. Jurisdiction relinquished.

Sullivan, J., Joins the Memorandum.

Pellegrini, J., Files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/26/2022